[No. S162675. Apr. 23, 2009.]

THE PEOPLE, Plaintiff and Respondent, v.
NICHOLAS SCOTT STONE, Defendant and Appellant.

## Counsel

Linnea Johnson and Patricia L. Watkins, under appointments by the Supreme Court, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, David A. Rhodes and Clayton S. Tanaka, Deputy Attorneys General; Ronald L. Calhoun, District Attorney, Adam Nelson and Mitchell Keiter, Deputy District Attorneys, for Plaintiff and Respondent.

## Opinion

**CHIN, J.**—Can a person who shoots into a group of people, intending to kill one of the group, but not knowing or caring which one, be convicted of attempted murder? Yes. The mental state required for attempted murder is the intent to kill *a* human being, not a *particular* human being.

### I. Facts and Procedural History

We take our facts primarily from the Court of Appeal's opinion.

Around 8:30 p.m. on the evening of October 21, 2005, Officer Mark Pescatore was on duty with two other police officers at a parking lot carnival in Lemoore. Officer Pescatore observed a group of 10 to 25 youths blocking the pathways and moving about the carnival area. About half of those in the group were wearing red, a color associated with Norteño street gangs. One of the officers believed the group was "looking for trouble." The group included 16-year-old Joel F. as well as Jamal, a Norteño gang member. Sixteen-year-old Camilo M., a member of a Sureño street gang, and his friend Abel Rincon were also at the carnival.

Several members of the Norteño gang called Camilo "scrapa," a derogatory term for a Sureño, and challenged him and Rincon to fight. Camilo and

Rincon decided not to fight and left the carnival. A group of Norteños followed them, and Jamal kicked Rincon's truck as Rincon and Camilo drove away. Camilo and Rincon returned home and told several people, including defendant, what had happened at the carnival. A short time later, Camilo and Rincon and others, including defendant, returned to the carnival in Rincon's truck. Rincon drove. Defendant sat on the passenger side of the truck.

Meanwhile, at the carnival, the police directed the Norteño group to leave, and about 10 of them went to a grassy area in the parking lot. When Rincon and his companions returned to the carnival, Rincon drove his truck past the group of Norteños twice. On the third pass, he stopped the truck 10 to 15 feet from the group and held up three fingers, a gang sign. Defendant rolled down his passenger window, pulled out a gun, and fired it. The truck then left the scene. Officer Pescatore, who was about 60 feet away, observed "an arm come out of the passenger window, and then saw a muzzle flash and heard a gunshot." He described the arm as "pointing straight out the window" at a group of individuals on the grassy island in the parking lot, about four to five feet away.

Joel F. testified that the gun in defendant's hand was "pointed up" slightly and extended toward the group when he fired. Joel did not think defendant had pointed the gun at anyone in particular, but he said that when the gun was fired, he ducked because he was worried about being shot. The group "scattered" and "[e]veryone kind of ducked." Joel testified that the gun had not been pointed "directly" at him, but it was "near" him. Joel also expressed the belief that the gun was fired "[j]ust to scare us. I don't really think he was trying to shoot anybody."

As relevant here, a jury found defendant guilty of one count of attempted premeditated murder (Pen. Code, §§ 187, 664) and found true personal use of a firearm and criminal street gang enhancement allegations (Pen. Code, §§ 186.22, subd. (b), 12022.53, subd. (b)). The information had alleged that Joel F. was the attempted murder victim. The court sentenced defendant to state prison, and he appealed.

The Court of Appeal reversed the attempted murder conviction and related enhancement findings. It concluded that the trial court prejudicially misinstructed the jury on the intent requirement of attempted murder. Additionally, it found insufficient evidence to support the attempted murder conviction and, citing *People v. Seel* (2004) 34 Cal.4th 535, 544 [21 Cal.Rptr.3d 179, 100 P.3d 870], it prohibited retrial on that count. It agreed with defendant that the evidence was insufficient "because it establishes, at most, that when he fired his single shot at the group of Norteños, [defendant] intended to kill someone but not specifically Joel F. and not everyone in the group." It found "not a

scintilla of evidence to distinguish Joel F. from any member of the group as a desired victim of [defendant's] fire."

We granted the Kings County District Attorney's petition for review.

## II. Discussion

■ Defendant was charged with and convicted of a single count of attempted murder for firing a single shot at a group of 10 people. "Attempted murder requires the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing." (*People v. Superior Court* (*Decker*) (2007) 41 Cal.4th 1, 7 [58 Cal.Rptr.3d 421, 157 P.3d 1017].) The main issue before us on review concerns the nature of the intent-to-kill requirement. Specifically, the question is whether the intent must be to kill a particular person, or whether a generalized intent to kill someone, but not necessarily a specific target, is sufficient.

Preliminarily, we must explain how this question arises in this case. The information specifically alleged that Joel F. was the attempted murder victim. The trial court instructed the jury on a particular theory of attempted murder, discussed in *People v. Bland* (2002) 28 Cal.4th 313 [121 Cal.Rptr.2d 546, 48 P.3d 1107] (*Bland*). Because *Bland* is central to the question here, we discuss it in detail.

■ In *Bland, supra,* 28 Cal.4th 313, the defendant and a cohort fired multiple shots at three persons in a car, killing the driver and injuring, but not killing, the two passengers. The defendant was convicted of murdering the driver *and* of attempting to murder the two passengers. The evidence supported a jury finding that the defendant intended to kill the driver, i.e., the one actually killed, but did not specifically target the two who survived. (*Id.* at p. 319.) We explained that a person who intends to kill is guilty of the murder of everyone actually killed, whether or not the person intended to kill each one. "[A] person maliciously intending to kill is guilty of the murder of all persons actually killed." (*Id.* at pp. 323–324.) But we also held that the situation is different concerning *attempted* murder. "The crime of attempt sanctions what the person intended to do but did not accomplish, not unintended and unaccomplished potential consequences." (*Id.* at p. 327.) We summarized the rule that applies when an intended target is killed and unintended targets are injured but not killed. "Someone who in truth does not intend to kill a person is not guilty of that person's attempted murder even if the crime would have been murder . . . if the person were killed. To be guilty of attempted murder, the defendant must intend to kill the alleged victim, not someone else. The defendant's mental state must be examined as to each alleged attempted murder victim. Someone who intends to kill only one person and attempts

unsuccessfully to do so, is guilty of the attempted murder of the intended victim, but not of others." (*Id.* at p. 328.)

We also explained, however, that if a person targets one particular person, under some facts a jury could find the person *also*, concurrently, intended to kill—and thus was guilty of the attempted murder of—other, nontargeted, persons. Citing a Maryland case (*Ford v. State* (1993) 330 Md. 682 [625 A.2d 984]), we explained that "the fact the person desires to kill a particular target does not preclude finding that the person also, concurrently, intended to kill others within what [the *Ford* court] termed the 'kill zone.' " (*Bland, supra,* 28 Cal.4th at p. 329.) For example, if a person placed a bomb on a commercial airplane intending to kill a primary target, but also ensuring the death of all the passengers, the person could be convicted of the attempted murder of all the passengers, and not only the primary target. (*Bland, supra,* at pp. 329–330.) Likewise, in *Bland,* "[e]ven if the jury found that defendant primarily wanted to kill [a driver] rather than [the] passengers, it could reasonably also have found a *concurrent* intent to kill those passengers when defendant and his cohort fired a flurry of bullets at the fleeing car and thereby created a kill zone. Such a finding fully supports attempted murder convictions as to the passengers." (*Id.* at pp. 330–331.)

We also explained in *Bland* that this "concurrent intent" or "kill zone" theory "is not a legal doctrine requiring special jury instructions . . . . Rather, it is simply a reasonable inference the jury may draw in a given case: a primary intent to kill a specific target does not rule out a concurrent intent to kill others." (*Bland, supra,* 28 Cal.4th at p. 331, fn. 6.) Nevertheless, current pattern jury instructions discuss the kill zone theory. (CALJIC No. 8.66.1 (2004 rev.);[1] CALCRIM No. 600 (2008).[2]) The Bench Notes to CALCRIM

---

[1] CALJIC No. 8.66.1 (2004 rev.) provides: "A person who primarily intends to kill one person, may also concurrently intend to kill other persons within a particular zone of risk. [This zone of risk is termed the 'kill zone.'] The intent is concurrent when the nature and scope of the attack, while directed at a primary victim, are such that it is reasonable to infer the perpetrator intended to kill the primary victim by killing everyone in that victim's vicinity. [¶] Whether a perpetrator actually intended to kill the victim, either as a primary target or as someone within a ['kill zone'][zone of risk] is an issue to be decided by you."

[2] CALCRIM No. 600 (2008) provides in relevant part: "A person may intend to kill a specific victim or victims and at the same time intend to kill anyone in a particular zone of harm or 'kill zone.' In order to convict the defendant of the attempted murder of ___ <*insert name of victim charged in attempted murder count[s] on concurrent-intent theory*>, the People must prove that the defendant not only intended to kill ___ <*insert name of primary target alleged*> but also either intended to kill ___ <*insert name of victim charged in attempted murder count[s] on concurrent-intent theory*>, or intended to kill anyone within the kill zone. If you have a reasonable doubt whether the defendant intended to kill ___ <*insert name of victim charged in attempted murder count[s] on concurrent-intent theory*> or intended to kill ___ <*insert name of primary target alleged*> by harming everyone in the kill zone, then you

No. 600 explain that *Bland* stated that a special instruction on the point is not required, and that the kill zone "language is provided for the court to use at its discretion."

In this case, the trial court gave a modified version of the CALCRIM kill zone instruction: "A person may intend to kill a specific victim or victims and at the same time intend to kill anyone in a particular zone of harm or . . . 'kill zone' . . . . [¶] In order to convict the defendant of the attempted murder of [Joel F.], the People must prove either that the defendant intended to kill [Joel F.], or that he not only intended to kill another human being, but also that he intended to kill anyone within the 'kill zone,' and that [Joel F.] was in the zone of harm or 'kill zone' at the time of the shot. [¶] If you have a reasonable doubt whether the defendant intended to kill [Joel F.] or intended to kill another by harming everyone in the 'kill zone,' or whether [Joel F.] was in the 'kill zone' then you must find the defendant not guilty of the attempted murder of [Joel F.]"

■ The Court of Appeal found that the court erred in giving this instruction.[3] We agree. The kill zone theory simply does not fit the charge or facts of this case. That theory addresses the question of whether a defendant charged with the murder or attempted murder of an intended target can *also* be convicted of attempting to murder other, nontargeted, persons. Here, defendant was charged with but a single count of attempted murder. He was not charged with 10 attempted murders, one for each member of the group at which he shot. As the Court of Appeal explained, "There was no evidence here that [defendant] used a means to kill the named victim, Joel F., that inevitably would result in the death of other victims within a zone of danger. [Defendant] was charged only with the attempted murder of Joel F. and not with the attempted murder of others in the group on which [defendant] fired his gun."

The error is not necessarily prejudicial by itself. But the Court of Appeal found the error prejudicial in light of the prosecutor's argument to the jury.

must find the defendant not guilty of the attempted murder of ___ <*insert name of victim charged in attempted murder count[s] on concurrent-intent theory*>."

[3] The Court of Appeal also noted two ambiguities in this portion of CALCRIM No. 600. First, as did the Court of Appeal in *People v. Campos* (2007) 156 Cal.App.4th 1228, 1241, 1243 [67 Cal.Rptr.3d 904], it noted that the instruction refers to the intent to kill "anyone" within the kill zone rather than "everyone." In context, a jury hearing about the intent to kill *anyone* within the kill zone would probably interpret it as meaning the intent to kill *any* person who happens to be in the kill zone, i.e., *everyone* in the kill zone. But any possible ambiguity can easily be eliminated by changing the word "anyone" to "everyone."

Second, the Court of Appeal noted that "the final sentence refers to an intent to *harm* everyone in the kill zone, rather than to *kill* everyone in the zone." Because the intent required for attempted murder is to kill rather than merely harm, it would be better for the instruction to use the word "kill" consistently rather than the word "harm."

Although the information alleged that Joel F. was the attempted murder victim, in his argument to the jury, the district attorney agreed he had not proven that defendant intended specifically to kill Joel F. rather than *someone* in the group of 10 persons. He argued, however, that an intent to kill someone, even if not specifically Joel F., was sufficient for the jury to find defendant guilty of the attempted murder charge.

The Court of Appeal found that the instructions, combined with the prosecutor's argument, might have caused the jury to believe it could convict defendant of attempted murder if it found an intent to kill someone, even if not specifically Joel F. It concluded that this was an "erroneous theory of guilt" requiring reversal. Moreover, it also found insufficient evidence to support the attempted murder conviction. Both of the Court of Appeal's conclusions—(1) that error in instructing on the kill zone theory, combined with the prosecutor's argument, was prejudicial; and (2) that insufficient evidence supports the attempted murder conviction—may have been based, at least in part, on the understanding that attempted murder requires the intent to kill a particular person. This is the primary question presented in the district attorney's petition for review. We now consider that question.

In *People v. Scott* (1996) 14 Cal.4th 544 [59 Cal.Rptr.2d 178, 927 P.2d 288], the defendant shot and killed an unintended target and wounded but did not kill the intended target. We affirmed convictions of murder of the unintended target and attempted murder of the intended target, holding that the intent to kill the intended target transferred to the unintended target and could also support a conviction of attempting to kill the intended target. Justice Mosk authored a concurring opinion criticizing use of the transferred intent doctrine. He argued that the same result applies simply by holding, as he would have, that "there is no requirement of an unlawful intent to kill *an intended victim*. The law speaks in terms of an unlawful intent to kill *a* person, not *the* person *intended to be killed*." (*Id.* at p. 556 (conc. opn. of Mosk, J.).) In *Bland*, we endorsed Justice Mosk's view that, for murder, the "intent to kill need not be directed at a specific person . . . ." (*Bland, supra*, 28 Cal.4th at p. 323.) "The social harm of murder is the 'killing of a human being by another human being.' The requisite intent, therefore, is the intent to kill *a*, not a specific, human being." (Dressler, Understanding Criminal Law (4th ed. 2006) § 10.04[b], p. 133; see also *People v. Scott, supra*, at pp. 554–556 (conc. opn. of Mosk, J.) [citing an earlier edition of this treatise].)

In *Bland*, however, we explained that in some respects, the mental state required for attempted murder differs from that required for murder. Attempted murder requires express malice, i.e., intent to kill. Implied malice—a conscious disregard for life—suffices for murder but not attempted

murder. In addition, transferred intent does not apply to attempted murder. (*Bland, supra,* 28 Cal.4th at pp. 327–328.) The Court of Appeal here may have interpreted our discussion in *Bland* as requiring, for attempted murder, a specific primary target. The Court of Appeal in *People v. Anzalone* (2006) 141 Cal.App.4th 380 [45 Cal.Rptr.3d 876], which reversed three of four convictions of attempted murder, seemed to interpret *Bland* this way. (See *id.* at pp. 392–393.) But the question never arose in *Bland*. In *Bland*, there *was* a primary target. We were considering the circumstances under which a person could be convicted of attempting to murder someone *other than* the primary target. We never considered, and accordingly expressed no view regarding, whether a person can be convicted of attempted murder when there is no primary target at all. ■ Cases are not authority for matters not considered. (*People v. Alvarez* (2002) 27 Cal.4th 1161, 1176 [119 Cal.Rptr.2d 903, 46 P.3d 372].)

■ Now that we consider the question, we conclude that a person who intends to kill can be guilty of attempted murder even if the person has no specific target in mind. An indiscriminate would-be killer is just as culpable as one who targets a specific person. One of *Bland*'s kill zone examples involved a bomber who places a bomb on a commercial airplane intending to kill a primary target but ensuring the death of all passengers. We explained that the bomber could be convicted of the attempted murder of all the passengers. (*Bland, supra,* 28 Cal.4th at pp. 329–330.) But a terrorist who simply wants to kill as many people as possible, and does not know or care who the victims will be, can be just as guilty of attempted murder.

*Bland* cited with approval *People v. Vang* (2001) 87 Cal.App.4th 554 [104 Cal.Rptr.2d 704], which affirmed convictions of 11 counts of attempted murder for spraying bullets at two occupied houses—one count for each person in the houses. (See *Bland, supra,* 28 Cal.4th at p. 330.) *Vang* found the evidence supported the conclusion that the "defendants harbored a specific intent to kill every living being within the residences they shot up." (*People v. Vang, supra,* at p. 564.) We described *Vang* as essentially a kill zone case. (*Bland, supra,* at p. 330.) Although the defendants in *Vang* apparently had a primary target at each house, nothing in either *Vang* or *Bland* suggests that if they had shot at the houses simply to kill everyone who happened to be present, without any primary target, then no conviction whatever for attempted murder would be possible. Although a primary target often exists and can be identified, one is not required.

We explained in *Bland* that difficulties can arise when deciding whether a person can be convicted of the attempted murder of an untargeted person *in addition to* the murder or attempted murder of the target, and regarding *how many* attempted murder convictions are permissible. (*Bland, supra,* 28 Cal.4th

at pp. 328–329; see also *People v. Smith* (2005) 37 Cal.4th 733 [37 Cal.Rptr.3d 163, 124 P.3d 730] [considering whether the defendant who fired one shot could be convicted of attempting to murder a baby in the line of fire in addition to the attempted murder of the mother, the primary target].) After all, "[t]he world contains many people a murderous assailant does not intend to kill." (*Bland, supra,* at p. 329.) But this case does not involve such difficulties. Defendant was not charged with the attempted murder of all the world, or even of everyone in the group at which he fired, but only of *one* attempted murder. Whatever difficulties exist in deciding how many attempted murders a would-be indiscriminate killer has committed, they do not exist here.

One difference regarding intent to kill does exist between murder and attempted murder. A person who intends to kill can be guilty of the murder of each person actually killed, even if the person intended to kill only one. (See *Bland, supra,* 28 Cal.4th at pp. 323–324.) The same is not necessarily true regarding attempted murder. Rather, "guilt of attempted murder must be judged separately as to each alleged victim." (*Id.* at p. 331.) But this is true whether the alleged victim was particularly targeted or randomly chosen. As the district attorney aptly summarizes in this case, "A defendant who intends to kill one person will be liable for multiple counts of murder where multiple victims die, but only one count of attempted murder where no one dies." But when no one dies that person *will* be guilty of attempted murder even if he or she intended to kill a random person rather than a specific one.

In this case, the information specifically alleged that defendant intended to kill Joel F. This allegation was problematic given that the prosecution ultimately could not prove that defendant targeted a specific person rather than simply someone within the group. In hindsight, it would no doubt have been better had the case been charged differently. In a case like this, the information does not necessarily have to name a specific victim. Penal Code section 952 states it is sufficient if the charge "contains in substance, a statement that the accused has committed some public offense therein specified," which "may be in . . . any words sufficient to give the accused notice of the offense of which he is accused." (See also Pen. Code, § 951.) A defendant's right to be informed of the charges "is satisfied when the accused is advised of the charges against him so that he has a reasonable opportunity to prepare and present a defense and is not taken by surprise by the evidence offered at trial." (*People v. Ramirez* (2003) 109 Cal.App.4th 992, 999 [135 Cal.Rptr.2d 542].) If the defendant is accused of attempted murder of someone, although not necessarily a specific person, it would be sufficient to allege enough facts to give notice of the incident referred to and that the defendant is charged with attempted murder. For example, in this case, it would have been sufficient to allege that defendant committed attempted murder, in that on or about October 21, 2005, he attempted to murder a member of a group of persons gathered together in a parking lot in Lemoore,

California. Although other ways to charge a case like this no doubt exist, a charge like this example would provide adequate notice of the offense of which defendant was accused.

The Court of Appeal should reconsider the issues of this case in light of the views expressed in this opinion. In doing so, the court should consider any issues regarding the variance between the information—alleging defendant intended to kill Joel F.—and the proof at trial—showing defendant intended to kill someone, although not specifically Joel F. (See Pen. Code, § 956.)

### III. CONCLUSION

We reverse the judgment of the Court of Appeal and remand the matter to that court for further proceedings consistent with our opinion.

George, C. J., Kennard, J., Baxter, J., Werdegar, J., Moreno, J., and Corrigan, J., concurred.