[No. B226343. Second Dist., Div. Four. Sept. 19, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
RUBEN RENE AMPERANO, Defendant and Appellant.

**COUNSEL**

Jonathan P. Milberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Pamela C. Hamanaka, Assistant Attorney General, Mary Sanchez and Robert S. Henry, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**WILLHITE, Acting P. J.**—Defendant Ruben Rene Amperano appeals from a judgment sentencing him to 50 years to life in prison, after a jury found him guilty of attempted premeditated murder (Pen. Code,[1] §§ 664, 187, subd. (a)) and shooting at an inhabited dwelling (§ 246), and found to be true allegations that defendant committed both crimes for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)(C)) and that defendant personally fired a handgun. Defendant contends there was insufficient evidence that he intended to kill the victim identified in the information and the verdict form. He also asks us to review the materials produced pursuant to his *Pitchess*[2] motion to determine whether the trial court followed the procedures set forth in *People v. Mooc* (2001) 26 Cal.4th 1216 [114 Cal.Rptr.2d 482, 36 P.3d 21]. We affirm the judgment.

## BACKGROUND

On June 22, 2008, Anita Rodriguez and her son Luis Garcia, a deputy with the Los Angeles County Sheriff's Department, found graffiti scrawled on the side of their house on Keith Drive in Whittier and on Garcia's car parked in front of the house. Garcia recognized the graffiti as tagging by a gang in the neighborhood, the Dead End Locos.

Two weeks later, on the evening of July 6, 2008, Rodriguez was home alone, asleep on the sofa in the living room. The television was on, but the lights were off. Shortly after 11:00 p.m., she heard a couple of pops and felt a stabbing pain in the back of her neck. She rolled off the sofa onto the floor, grabbed a telephone, and called 911. She had been shot. A deputy who responded to the 911 call found three entry bullet holes on the southeast-facing window of Rodriguez's house, four entry bullet holes on the southwest-facing window, four .380-caliber casings below the southwest-facing window, and several bullet projectiles or fragments inside the house.

Four days later, while conducting a search of defendant's apartment, a deputy found a loaded .22-caliber revolver and ammunition. The deputy arrested defendant and impounded his vehicle, a gold Ford Explorer.[3] Detective Hank Ortega subsequently searched the vehicle, and found a live

---

[1] Further undesignated statutory references are to the Penal Code.

[2] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305].

[3] The search of defendant's apartment was conducted as part of a large-scale parole/probation operation focusing on the Dead End Locos gang. The jury was not told the reason for the search.

.22-caliber round, materials with gang writing, and a newspaper with a story about the shooting.

Detective Ortega and his partner, Detective John Clark, interviewed defendant. Defendant admitted that the gun found in his apartment was his, and that he was involved in the shooting on Keith Drive, but he said he had shot at the wrong house. He told the detectives that he was from the Dead End Locos gang, and was called "Sharky." The night before the shooting, he had passed by the house and saw a lot of people in front, two of whom he recognized from when they beat him up. The people who jumped him were FMK members, and he thought the house was an FMK gang house.[4] On the night of the shooting, defendant said he drove to the area and parked nearby. He walked up to the window on the Sorensen Avenue side (the east side) of the house and fired two rounds. He told the detectives that he did not see anyone inside the house because there were no lights on inside; only the front porch light was on. He said he just intended to shoot a window out, and did not know that anyone had been hit until he saw it on the news. He also said that he went to the house alone. When the detectives challenged that, telling him there was evidence that shots were also fired into the window on the west side of the house, he denied firing those shots, and continued to deny there was anyone with him. Later, he conceded that he did hear shots being fired at the other window, but he did not see who was firing.

Defendant was charged by information with two counts: attempted premeditated murder of Anita Rodriguez (§§ 664, 187, subd. (a)) and shooting at an inhabited dwelling (§ 246). The information also alleged that the crimes were committed for the benefit of a street gang (§ 186.22, subd. (b)(1)(C) & (4)), that defendant personally used and discharged a firearm (§ 12022.53, subds. (b) & (c)), and that defendant suffered a prior conviction under the "Three Strikes" law (§§ 667, subds. (b)–(i), 1170.12, subds. (a)–(d)), and served a prior prison term (§ 667.5, subd. (b)).[5]

Before trial, defendant filed a *Pitchess* motion seeking materials that relate to accusations and/or evidence that the detectives who interviewed him, Detectives Ortega and Clark, have engaged in acts of dishonesty, coercive interrogation tactics, or other acts of misconduct. The trial court (Judge Lori Ann Fournier, presiding) granted an in camera hearing based upon defendant's allegation that threats were made. The court stated that defendant would be entitled to discover any complaints against Detective Clark related to

---

[4] FMK is a tagging crew affiliated with the Quiet Village gang. FMK and Dead End Locos are rivals; Keith Drive is in Dead End Locos territory.

[5] Although the information named two codefendants, defendant was tried separately.

threats made, as well as complaints related to dishonesty, perjury, fabrication, or false police reports, since he was the author of the report at issue in the present case. As to Detective Ortega, the court stated that defendant was entitled only to complaints related to threats made. The court conducted an in camera hearing and ordered the disclosure of two complaints.

Defendant also joined in a codefendant's pretrial motion to dismiss the attempted murder count under section 995. At the hearing on that motion, defendant's counsel argued that defendant could not be charged with attempted murder because there was no evidence that he intended to kill Rodriguez. The prosecutor responded that one could infer from evidence that defendant fired multiple shots into a house, in the context of a gang feud, that defendant intended to kill whoever was present in the house. The trial court denied the motion to dismiss, saying that defendant's admission that he shot into a house where he believed rival gang members lived was sufficient evidence to support the magistrate's ruling to hold defendant to answer for the attempted murder charge.

In his opening statement at trial, defendant's counsel conceded that the evidence would show that defendant shot into the house and that he had associations with the Dead End Locos gang, but maintained that the evidence would not show that he intended to kill anyone or that the shooting was intended to benefit the gang. As part of the People's case-in-chief, the prosecutor played an audio recording of the detectives' interview of defendant, in which defendant admitted that he shot into a house he believed to be an FMK house, and presented testimony by an expert witness regarding the Dead End Locos gang, its rivalry with FMK, and gang culture. Defendant did not present an affirmative defense.

The jury was instructed that two elements must be proved to establish attempted murder: "1. A direct but ineffectual act was done by one person towards killing another human being; and [¶] 2. The person committing the act harbored express malice aforethought, namely, a specific intent to kill unlawfully another human being." The prosecutor discussed those elements in his closing argument, saying that defendant's intent to kill was established by the fact that he shot through the window into a room where the television was on, at the one place where someone who was sitting or lying down could be killed. Defense counsel argued in his closing argument that the mere act of shooting into the house was insufficient to establish attempted murder, and that there must be evidence that defendant intended to kill Rodriguez. He

contended there was no such evidence; instead, the evidence was that defendant could not see that there was anyone inside the house and did not intend to hit anyone.

The jury found defendant guilty on both counts, and found the gang and gun allegations to be true. Defendant waived his right to a jury trial on the prior conviction allegation, and the trial court found that allegation to be true. The court sentenced defendant to life in prison with a minimum parole eligibility of 50 years on count 1 (life for the attempted murder, with a minimum of 15 years under § 186.22, subd. (b)(5), doubled under the Three Strikes law, plus a consecutive 20 years under § 12022.53, subd. (c)). The court imposed a sentence of 30 years to life on count 2, and stayed that sentence under section 654. Defendant timely filed a notice of appeal from the judgment.

## DISCUSSION

### A. *Attempted Murder Conviction*

Defendant contends there was insufficient evidence to support the attempted murder conviction because there was no evidence he intended to kill the person named in the information and verdict, i.e., Anita Rodriguez. He observes that the prosecutor conceded at trial that defendant did not intend to harm Rodriguez, but instead intended to kill members of FMK. Since the information did not charge defendant with attempted murder of FMK members, nor was the jury instructed on a "kill zone" theory, defendant argues his conviction for attempted murder of Rodriguez must be reversed. We disagree.

■ Defendant's argument appears to arise from a statement by the Supreme Court in *People v. Stone* (2009) 46 Cal.4th 131 [92 Cal.Rptr.3d 362, 205 P.3d 272]. In that case, the defendant fired a gun at a group of rival gang members and was convicted of attempted murder of one person in that group, Joel F. (*Id.* at p. 135.) The Court of Appeal reversed the conviction, finding the evidence was insufficient " 'because it establishes, at most, that when he fired his single shot at the group . . . , [defendant] intended to kill someone but not specifically Joel F. and not everyone in the group.' " (*Ibid.*) The Supreme Court granted review to address the intent-to-kill requirement for attempted murder: "Specifically, the question is whether the intent must be to kill a particular person, or whether a generalized intent to kill someone, but not necessarily a specific target, is sufficient." (*Id.* at p. 136.) The court concluded "that a person who intends to kill can be guilty of attempted murder even if the person has no specific target in mind." (*Id.* at p. 140.) It reversed the judgment of the Court of Appeal because it appeared that the appellate court's conclusions were based on the erroneous belief that attempted murder requires the intent to kill a particular person. (*Id.* at p. 139.)

In reversing the judgment, the Supreme Court observed that the information alleged that the defendant intended to kill Joel F., and stated that "[t]his allegation was problematic given that the prosecution ultimately could not prove that defendant targeted a specific person rather than simply someone within the group." (*People v. Stone, supra*, 46 Cal.4th at p. 141.) The court noted that the case could have been charged without naming a specific victim, which would have been sufficient to satisfy the defendant's right to be informed of the charges against him, to allow him a reasonable opportunity to prepare and present a defense. (*Ibid.*) The Supreme Court remanded the matter to the appellate court to reconsider the issues in light of the views expressed in its opinion. In doing so, it directed the appellate court to "consider any issues regarding the variance between the information— alleging defendant intended to kill Joel F.—and the proof at trial—showing defendant intended to kill someone, although not specifically Joel F. (See Pen. Code, § 956.)" (*Id.* at p. 142.)[6]

Seizing on the Supreme Court's characterization as "problematic" the allegation that the defendant attempted to murder a specific victim when the evidence shows that the defendant did not specifically target any person, defendant in this case asserts that his conviction for attempting to murder Anita Rodriguez cannot stand. But the Supreme Court did not find that the variance between the information and the proof at trial in *Stone* required reversal of the conviction. Instead, it remanded the matter to the appellate court to consider any issues regarding that variance, citing section 956. (*People v. Stone, supra*, 46 Cal.4th at p. 142.) That section states: "When an offense involves the commission of, or an attempt to commit a private injury, and is described with sufficient certainty in other respects to identify the act, *an erroneous allegation as to the person injured, or intended to be injured*, or of the place where the offense was committed, or of the property involved in its commission, *is not material*." (*Ibid.*, italics added.)

█ The key issue is whether the accused is sufficiently "advised of the charges against him so that he has a reasonable opportunity to prepare and present a defense and is not taken by surprise by the evidence offered at trial." (*People v. Ramirez* (2003) 109 Cal.App.4th 992, 999 [135 Cal.Rptr.2d 542]; accord, *People v. Stone, supra*, 46 Cal.4th at p. 141.) Here, the information alleged that "[o]n or about July 6, 2008, in the County of Los Angeles, the crime of ATTEMPTED WILLFUL, DELIBERATE, PREMEDI-TATED MURDER, in violation of PENAL CODE SECTION 664/187(a), a Felony, was committed by RUBEN RENE AMPERANO . . . who did unlawfully and with malice aforethought attempt to murder ANITA RODRIGUEZ, a human being." At the preliminary hearing, the prosecutor made clear the basis for this count: he argued that evidence that defendant

---

[6] The opinion of the Court of Appeal on remand was not certified for publication.

(and his then codefendant) fired into a house where they believed a member of FMK lived established the intent-to-kill element of the attempted murder charge.

The prosecutor reiterated this theory at the pretrial hearing on defendant's motion to dismiss the attempted murder charge under section 995. In response to defendant's argument that there was no evidence to show there was intent to kill because there was no intended target, the prosecutor argued that intent to kill whoever was in the house could be inferred from evidence that defendant fired multiple shots into a house in which he believed an FMK member was present.

Finally, the case was tried on this theory. The jury was instructed that attempted murder required an intent to murder a human being, and the prosecutor argued in closing that this element was established by the evidence that defendant shot into a window and fired toward a sofa in front of the television, which was on. Although defense counsel argued in his closing argument that there was no evidence defendant intended to kill Rodriguez, he did so in the context of arguing that the evidence showed that defendant could not see that there was anyone inside the house and did not intend to hit anyone. In other words, the issue at trial was whether there was sufficient evidence that defendant believed there was someone in the house into which he fired, which would support an inference that he intended to kill that person.

■ In light of the prosecutor's many statements, both pretrial and during trial, that the basis for the attempted murder charge was defendant's intent to kill whoever was in the house into which he fired, we find that defendant was adequately advised of the charge against him and given a meaningful opportunity to defend against it. Thus, the variance between the information and the proof at trial was not material and does not require reversal of the conviction. (*People v. Williams* (1945) 27 Cal.2d 220, 226 [163 P.2d 692] ["[T]echnical or trifling matters of discrepancy will not furnish ground for reversal. Under the generally accepted rule in criminal law a variance is not regarded as material unless it is of such a substantive character as to mislead the accused in preparing his defense, or is likely to place him in second jeopardy for the same offense."].)

To the extent defendant's argument for reversal is based upon a perceived variance between the jury's verdict[7] and the proof at trial—he argues the jury

---

[7] The verdict form signed by the foreperson stated in relevant part: "We, the Jury in the above-entitled action, find the defendant, RUBEN RENE AMPERANO, guilty of the crime of ATTEMPTED MURDER, on Anita Rodriguez, a human being, in violation of California Penal Code section 664/187 (a), a felony, as charged [in] Count 01 of the Information."

specifically found him guilty of attempted murder of Anita Rodriguez, but the undisputed evidence was that defendant did not know that she lived at the house he targeted, and therefore there was insufficient evidence to support the jury's verdict—his argument also fails. The jury's verdict must be read in the context of the instructions given and the arguments made at trial. The trial court instructed the jury that "Defendant is accused in Count 1 of having committed the crime of attempted murder, in violation of sections 664 and 187 of the Penal Code," and that one of the elements of the crime that must be proved is that "[t]he person committing the act harbored . . . a specific intent to kill unlawfully another human being." The prosecutor reiterated that instruction in his closing argument, noting that attempted murder required a specific intent to kill unlawfully another human being. He argued that the evidence established that "the only thing on the defendant's mind was the intent to kill a rival, another human being. That is what the crime of attempted murder requires."

■ In light of these instructions and argument, the only reasonable interpretation of the jury's finding that defendant was "guilty of the crime of ATTEMPTED MURDER, on Anita Rodriguez, a human being" is that the jury found that defendant intended to kill another human being, who turned out to be Rodriguez. Given defendant's concession in his appellant's opening brief that "the undisputed evidence . . . was that [defendant's] intention, when he shot up Mrs. Rodriguez' house by mistake, was to kill either 'Space Jam' or other members of the [FMK]," and defense counsel's concession at oral argument that this evidence would be sufficient to convict on attempted murder of an FMK member, we conclude that substantial evidence supports the attempted murder conviction here. (See *People v. Stone, supra,* 46 Cal.4th at p. 134 ["The mental state required for attempted murder is the intent to kill *a* human being, not a *particular* human being."].)

## B. Pitchess *Motion*

As noted above, the trial court granted an in camera hearing on defendant's *Pitchess* motion, and ordered the custodian of records to disclose two complaints. On appeal, defendant asks us to review the materials in camera to determine whether the trial court followed the proper procedures set forth in *People v. Mooc, supra,* 26 Cal.4th 1216. We have reviewed the moving papers and the sealed transcript of the in camera hearing. We conclude the trial court followed proper procedures, and we find no error in the court's rulings.

## DISPOSITION

The judgment is affirmed.

Manella, J., and Suzukawa, J., concurred.

Appellant's petition for review by the Supreme Court was denied December 14, 2011, S197056.