Filed 12/19/13  P. v. Flores CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B240862 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA306631) |
| v. | |
| EDUARDO LALO FLORES, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Jose I. Sandoval, Judge.  Vacated in part and remanded, otherwise affirmed.

Elana Goldstein, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven E. Mercer and Alene M. Games, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Eduardo Lalo Flores appeals from the judgment entered following a jury trial that resulted in his convictions for three counts of custodial possession of a weapon. He was sentenced to a term of 10 years in prison.

Flores contends the trial court abused its discretion by failing to sua sponte order a third competency hearing prior to sentencing; evidence suggested he may have been incompetent during trial; he was deprived of a trial on various prior conviction allegations; and his custody credits were improperly calculated. Flores also requests that we review the sealed record of the trial court's *Pitchess*[1] examination of police personnel records to determine whether the court abused its discretion by failing to order disclosure. (*People v. Mooc* (2001) 26 Cal.4th 1216.) We affirm the judgment of conviction, but vacate Flores's sentence and remand for a trial on the prior conviction allegations and for resentencing.

FACTUAL AND PROCEDURAL BACKGROUND

1. *Facts.*

On July 22, 2006, Los Angeles County Sheriff's deputies conducted a random cell search of Flores's cell at the Twin Towers Correctional Facility in Los Angeles. Under Flores's bed, on a storage shelf, one of the deputies found a jail-made "sap," a weighted striking device. The sap had been crafted from a prison-issued sock and seven bars of prison-issued soap. Flores's personal property was also on the shelf. The deputies confiscated the sap and returned Flores and his cellmate to the cell.

Five minutes later, the deputies returned to Flores's cell. Flores appeared to be making another sap with a sock and bottles of lotion. When Flores saw the deputies, he grabbed a small razor blade from a desk in the cell and attempted to cut open the sap. Deputies had not observed the razor blade during the first search.

On February 15, 2007, a deputy found a "shank," a homemade stabbing instrument, in Flores's cell under his mattress. The weapon was approximately four and one-half inches long and three quarters of an inch wide; it had a cloth handle and had

---

[1] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531.

2

been sharpened to a point. It was wrapped in plastic wrap, with a label indicating the wrap came from Flores's "special diet" lunch. When subsequently asked why he had the shank, Flores replied, " 'You know.' "

2. *Procedure.*

Trial was by jury. Flores was convicted of three counts[2] of custodial possession of a weapon (Pen. Code, § 4502, subd. (a)).[3] The trial court sentenced Flores to 10 years in prison. It imposed a restitution fine, a suspended parole restitution fine, a court security assessment, and a criminal conviction assessment. Flores appeals.

DISCUSSION

1. *Failure to order additional competency hearing.*

a. *Additional facts.*

The jury rendered its verdicts on July 23, 2007.

When Flores appeared for sentencing on November 2, 2007, defense counsel declared a doubt as to Flores's competence based on the fact that competency proceedings were pending in an unrelated case, No. TA090293. The trial court suspended proceedings in the instant matter until December 10, 2007.

On December 10, 2007, the trial court observed that Flores had been found incompetent in case No. TA090293 and had been committed to Patton State Hospital. The court reviewed psychiatric evaluations of Flores by Drs. Marshall S. Cherkas and Robert M. Brook, conducted in regard to case No. TA090293. Both doctors had concluded Flores was incompetent to stand trial.[4] Accordingly, the trial court found Flores incompetent.

---

[2]     The jury deadlocked on a fourth count of custodial possession of a weapon, and the trial court declared a mistrial on that count.

[3]     All further undesignated statutory references are to the Penal Code.

[4]     Dr. Cherkas interviewed Flores on August 18, 2007 and concluded he was "obviously psychotic with paranoid ideation." Flores told Dr. Cherkas that he "hears voices at times and sees shadows." Cherkas concluded that Flores "really doesn't know

3

On September 8, 2008, the trial court reinstated proceedings after reviewing a report from the Department of Mental Health that concluded Flores had been restored to competency. Sentencing was scheduled for October 15, 2008.

On October 15, 2008, defense counsel again declared a doubt about Flores's competence, explaining that Flores was refusing to take his medications or come into the courtroom. Counsel averred that Flores was "not stable" and was "a danger to himself." The trial court suspended proceedings and ordered that Flores be re-examined.

In December 2008, Dr. Cherkas concluded Flores was marginally competent. However, the court found the doctor's report inconclusive and ordered preparation of a supplemental report. Dr. Cherkas reinterviewed Flores on January 17, 2009, concluded he was not competent, and recommended Flores be referred back to Patton State Hospital. Consequently, on March 4, 2009 the trial court found Flores incompetent. A June 2010 update from Patton State Hospital stated that Flores was still incompetent.[5]

On August 6, 2010, the trial court indicated it had received a new report from Patton State Hospital concluding Flores had been restored to competency. Defense counsel stated that Flores had no memory of being convicted and was confused as to why he was being sentenced. Flores also refused to come into the courtroom. The trial court found Flores mentally competent and reinstated criminal proceedings. Sentencing was scheduled for September 3, 2010.

---

what a judge's job is, nor a jury" or "what a district attorney does." Dr. Brook examined Flores on September 1, 2007, and determined that he suffered from a serious mental disorder, displayed "some cognitive distortion about the meaning of generally well-understood everyday events," and had a history of psychiatric inpatient treatment, suicide attempts, and self-mutilation.

[5] The report stated that Flores suffered from schizoaffective disorder, bipolar type, antisocial personality disorder, borderline intellectual functioning, and polysubstance dependence, and was taking three psychotropic medications.

4

On September 3, 2010, Flores, through counsel, indicated he had retained a new attorney. However, retained counsel was not present for unknown reasons, and Flores requested a *Marsden* hearing.[6] After denying the *Marsden* motion, the trial court asked defense counsel whether he had spoken to Flores. Defense counsel stated he had, and Flores was "very lucid and he's speaking rather intelligently," which was "an improvement of what we've seen in the past." The court opined, "His restoration to competency I think is made evident by his articulation today." Defense counsel requested and was given a continuance in order to prepare a sentencing memorandum.

The sentencing memorandum subsequently filed by the defense stated that Flores had possessed the weapons due to fear arising from his delusional state of mind. Flores had "a much better mental state of mind" at the time the memorandum was prepared. The sentencing hearing transpired on September 10, 2010. Neither defense counsel nor the court indicated any concern about Flores's mental competence at that time.

b. *Applicable legal principles.*

A defendant is presumed competent unless a preponderance of the evidence proves otherwise. (*People v. Ramos* (2004) 34 Cal.4th 494, 507; *People v. Ary* (2011) 51 Cal.4th 510, 518; § 1369, subd. (f).) Both the due process clause of the Fourteenth Amendment and state law prohibit the trial of a criminal defendant while he or she is mentally incompetent. (*People v. Mai* (2013) 57 Cal.4th 986, 1032; *People v. Elliott* (2012) 53 Cal.4th 535, 582; *People v. Murdoch* (2011) 194 Cal.App.4th 230, 236; § 1367, subd. (a).) A defendant is deemed competent only if he has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding, and has a rational and factual understanding of the proceedings against him. (*Mai*, at p. 1032; *Ary,* at p. 517; § 1367, subd. (a).) "The focus of the inquiry is the defendant's mental capacity to understand the nature and purpose of the proceedings against him or her. [Citations.]" (*People v. Blair* (2005) 36 Cal.4th 686, 711.) The defendant has the burden

---

[6]     *People v. Marsden* (1970) 2 Cal.3d 118.

of establishing lack of competence. (*Ary*, at p. 518.) We review a trial court's decision whether to grant a competency hearing for abuse of discretion. (*Ramos*, at p. 507.)

A trial judge must "suspend proceedings and conduct a competency hearing whenever the court is presented with substantial evidence of incompetence, that is, evidence that raises a reasonable or bona fide doubt concerning the defendant's competence to stand trial. [Citations.]" (*People v. Blair, supra,* 36 Cal.4th at p. 711; § 1368, subd. (a); *People v. Ary, supra,* 51 Cal.4th at p. 517; *People v. Ramos, supra,* 34 Cal.4th at p. 507.) Evidence of incompetence may emanate from several sources, including the defendant's demeanor, irrational behavior, and prior mental evaluations. To be entitled to a competency hearing, a defendant must exhibit more than a preexisting psychiatric condition that has little bearing on the question of whether he can assist his defense counsel. (*People v. Rogers* (2006) 39 Cal.4th 826, 847.)

The court's duty to conduct a competency hearing may arise at any time prior to judgment. (*People v. Rogers, supra,* 39 Cal.4th at p. 847; *People v. Murdoch, supra,* 194 Cal.App.4th at p. 236.) " ' "When a competency hearing has already been held and defendant has been found competent to stand trial, . . . a trial court need not suspend proceedings to conduct a second competency hearing unless it 'is presented with a substantial change of circumstances or with new evidence' casting a serious doubt on the validity of that finding. [Citations.]" ' " (*People v. Taylor* (2009) 47 Cal.4th 850, 864; *People v. Kelly* (1992) 1 Cal.4th 495, 542; *People v. Lawley* (2002) 27 Cal.4th 102, 136.)

Failure to declare a doubt and to conduct a competency hearing when there is substantial evidence of incompetence requires reversal of the judgment. (*People v. Blair, supra,* 36 Cal.4th at p. 711; *People v. Rogers, supra,* 39 Cal.4th at p. 847.) "A trial court's decision whether or not to hold a competence hearing is entitled to deference, because the court has the opportunity to observe the defendant during trial." (*Rogers*, at p. 847; *People v. Mai, supra,* 57 Cal.4th at p. 1033; *People v. Lewis* (2008) 43 Cal.4th 415, 525.) "In resolving the question of whether, as a matter of law, the evidence raised a reasonable doubt as to defendant's mental competence, we may consider all the relevant facts in the record." (*People v. Young* (2005) 34 Cal.4th 1149, 1217.)

6

c.  *Application here.*

Flores contends (1) the trial court erred by failing to sua sponte order a competency hearing after the August 6, 2010 hearing and prior to sentencing; and (2) the matter should be remanded for a new trial because "there was sufficient evidence to believe that appellant may not have been competent at the time of trial."  We disagree.

(i)  *Failure to order a third competency hearing prior to sentencing.*

The trial court did not abuse its discretion by failing to order a third competency hearing prior to sentencing.  The court had previously conducted two competency hearings and ordered Flores committed to Patton State Hospital, where he had been treated.  On August 6, 2010, the trial court found Flores mentally competent in light of the most recent evaluation from Patton State Hospital, which concluded that he had been restored to competency.  No substantial change of circumstances or new evidence cast doubt on the validity of the report's conclusion at the time of sentencing.  (See *People v. Taylor, supra,* 47 Cal.4th at p. 864.)

Flores argues that the facts he was confused about his conviction and refused to enter the courtroom on August 6, 2010, coupled with his history of mental illness, suggested he "may have been decompensating."  This evidence does not, in our view, amount to a substantial change of circumstances or suggest Flores had decompensated. Flores's prior psychiatric history was obviously not new evidence, as it was known and taken into consideration by the hospital team and the court.  The fact a defendant suffers from a mental illness and takes psychotropic medications does not mean he is unable to understand the proceedings or assist in his own defense.  (*People v. Smith* (2003) 110 Cal.App.4th 492, 502.)  "[E]ven a history of serious mental illness does not necessarily constitute substantial evidence of incompetence . . . ."  (*People v. Blair, supra,* 36 Cal.4th at p. 714; *People v. Ramos, supra,* 34 Cal.4th at p. 508.)  Nor did Flores's refusal to enter the courtroom demonstrate incompetence.  "[A]n uncooperative attitude is not, in and of itself, substantial evidence of incompetence."  (*People v. Mai, supra,* 57 Cal.4th at p. 1034.)  Indeed, to raise a doubt as to competence, a defendant must exhibit more than

7

"bizarre, paranoid behavior, [or] strange words. " (*Ramos*, at p. 508; *People v. Ramirez* (2006) 39 Cal.4th 398, 431; *People v. Lewis, supra,* 43 Cal.4th at pp. 524, 526.)

Moreover, Flores's argument fails to take into account events subsequent to the August 6 hearing. When Flores appeared before the court for sentencing on September 3, 2010, he requested a *Marsden* hearing by name, indicated he had attempted to retain a new attorney, and appeared to defense counsel to be "very lucid" and "speaking rather intelligently," in contrast to his previous demeanor. The trial court, after hearing and denying the *Marsden* motion, opined that Flores's "restoration to competency . . . is made evident by his articulation today." (See generally *People v. Ramirez, supra,* 39 Cal.4th at p. 431 [no substantial evidence that defendant was incompetent where, inter alia, the court's observations of defendant raised no question in the court's mind about his competence].) Defense counsel's sentencing memorandum commented on Flores's improved mental state. Neither defense counsel nor the trial court expressed concern about Flores's mental state at sentencing. In short, the record is devoid of evidence suggesting that the trial court was presented with any reason to suspect Flores was incompetent at the time of sentencing.

Flores relies upon *United States v. Dreyer* (9th Cir. 2013) 705 F.3d 951 [2013 U.S. App. LEXIS 416] (*Dreyer*), in support of his argument. There, a divided panel of the Ninth Circuit held a district court erred by failing to sua sponte order a competency hearing before sentencing. (*Id.* at pp. 957, 964.) In *Dreyer,* the defendant, a psychiatrist, pleaded guilty to participating in a conspiracy to illegally distribute controlled substances. Three experts, including one selected by the government, agreed that Dreyer suffered from frontotemporal dementia, a degenerative brain disorder that causes changes in personality and behavior, disinhibition, and a loss of insight and impulse control. (*Id.* at p. 957.) None of the experts opined that Dreyer was legally incompetent. (*Id.* at p. 958.) At sentencing, defense counsel informed the court that the defendant would not address the court, or "allocute," due to the dementia's effect on his behavior. (*Id.* at p. 959.) The *Dreyer* majority concluded that competence at sentencing required that the defendant be able to assist in his own defense by participating in his " 'elementary right' of

8

allocution." (*Id.* at p. 961.) Given the "consistency between counsel's statements and the supporting expert reports, the district court had substantial evidence before it that should have created a reasonable doubt in its mind as to Dreyer's ability to assist in his own defense, and thus as to his competency." (*Id.* at p. 962.) Consequently, "the district court committed error by failing to order a competency hearing *sua sponte* despite a record that raises a genuine doubt that the defendant was incapable of assisting properly at the sentencing proceeding." (*Id.* at p. 960.)

*Dreyer* does not assist Flores here. Under *Dreyer,* when a competency determination is challenged on appeal, " 'the record is reviewed to see if the evidence of incompetence was such that a reasonable judge would be expected to experience a genuine doubt respecting the defendant's competence.' " (*Dreyer, supra,* 705 F.3d at 960.) As we have discussed, the evidence here was not such that a reasonable judge would have had a genuine doubt about Flores's competence at the time of sentencing. Unlike in *Dreyer,* there was no medical evidence that, at the time of sentencing, Flores was unable to meaningfully assist in his defense. Moreover, the *Dreyer* majority opinion did not garner unqualified acceptance in the Ninth Circuit. In addition to a dissent in the opinion itself, eight judges joined in a dissent from a denial of rehearing en banc, criticizing the majority opinion. In any event, decisions of the intermediate federal courts are not binding on this court. (E.g., *People v. Bradford* (1997) 15 Cal.4th 1229, 1292; *People v. Tuggle* (2012) 203 Cal.App.4th 1071, 1076.)

(ii) *Competence during trial.*

We likewise reject Flores's contention that the evidence showed he was incompetent during trial. Flores points to a minute order indicating that on July 25, 2007, two days after the jury rendered its verdict in the instant case, defense counsel in unrelated case No. TA090293 declared a doubt regarding Flores's competence, because Flores was "non-responsive." The trial court in that matter found Flores incompetent to stand trial and suspended proceedings on that date. Flores avers that in light of the timing of the incompetence finding, along with the extended period he subsequently required to be restored to competency, there was "sufficient evidence to believe that [he] may not

9

have been competent at the time of trial" in the instant matter. Accordingly, he seeks remand for a new trial.

While we are somewhat troubled by the timing of the incompetence finding in the unrelated case, we cannot say it demonstrates Flores must have been incompetent during trial in the instant matter. Flores's counsel in case No. TA090293 declared a doubt based on Flores's non-responsiveness, but neither the trial court nor defense counsel in the instant matter suggested Flores was non-responsive during trial. Indeed, prior to the jury's verdicts neither the trial court nor defense counsel expressed concern about Flores's mental state. Our review of the record of trial does not reveal any circumstance that might have triggered such concerns. As the People point out, the contention that Flores was incompetent prior to sentencing is therefore speculative, and does not provide evidence sufficient to prove he was incompetent during trial. Flores fails to provide authority for the conclusion that a subsequent finding of incompetence in an unrelated case necessarily proves he was previously incompetent in a different case.

2. *Trial on the prior conviction allegations.*

a. *Additional facts.*

The amended information alleged that Flores had served two prior prison terms within the meaning of section 667.5, subdivision (b), and had suffered one prior "strike" conviction (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)). When arraigned, Flores denied all special allegations contained in the complaint.

After the jury rendered its verdicts, Flores waived his right to a jury trial on the prior conviction allegations. The prosecutor queried whether Flores would admit the priors, and defense counsel responded that he wished to review the information provided by the People before answering. Sentencing was scheduled for a later date.

On November 2, 2007, at the outset of the hearing the trial court queried whether Flores would admit the priors. However, as explained *ante*, defense counsel declared a doubt, proceedings were suspended, and Flores was eventually found incompetent and committed to Patton State Hospital. The issue of the priors was not resolved.

10

After Flores's competence was restored, at the hearing on September 3, 2010, the trial court observed, "I don't believe we ever got the admission for the priors." Defense counsel concurred. As noted *ante,* sentencing was put over until September 10, 2010.

At the September 10, 2010 sentencing hearing, the trial court erroneously stated that Flores had "admitted those prior convictions previously." Defense counsel did not object or correct the court, and the parties proceeded as if Flores had admitted the priors.[7] Accordingly, the court sentenced Flores as if he had suffered the prior convictions, doubling the principal and subordinate terms pursuant to the Three Strikes law, and imposing a stayed one-year term on the section 667.5, subdivision (b) enhancement. The court's minute order states, "Later, the defendant admits priors," but the reporter's transcript does not contain any such admission.

b. *Discussion.*

Prior conviction allegations, if not admitted by a defendant, must be proven by the People beyond a reasonable doubt. (§ 1025, subds. (a), (b); *People v. Miles* (2008) 43 Cal.4th 1074, 1082; *People v. Monge* (1997) 16 Cal.4th 826, 833-834; *People v. Roberts* (2011) 195 Cal.App.4th 1106, 1116; *People v. Fielder* (2004) 114 Cal.App.4th 1221, 1232; *People v. Superior Court (Andrades)* (2003) 113 Cal.App.4th 817, 833-834.)

Here, as the parties agree, neither circumstance occurred: Flores did not admit the priors, and the People did not prove them. Without one or the other, Flores should not have been sentenced pursuant to the Three Strikes law, nor should a section 667.5 enhancement have been imposed.

Flores asserts that his sentence must simply be reduced to five years, the applicable term had the enhancements not been found true. The People, however, correctly point out that the proper remedy is to remand to the trial court for a trial on the prior conviction allegations, if the prosecutor so elects. "Our Supreme Court has held that, where a prior conviction finding is reversed on appeal for a lack of substantial

---

[7] Indeed, the defense sentencing memorandum stated that Flores was ineligible for probation "due to his admitted conviction of" a strike prior. (Bold in original omitted.)

evidence, the proper procedure is to remand the case to the trial court for a retrial of the prior conviction allegation. [Citation.]" (*People v. Franz* (2001) 88 Cal.App.4th 1426, 1455; *People v. Scott* (2000) 85 Cal.App.4th 905, 915.) Neither double jeopardy nor due process bars retrial of a prior conviction allegation on remand. (*People v. Barragan* (2004) 32 Cal.4th 236, 241; *People v. Monge, supra*, 16 Cal.4th at pp. 844-845; *People v. Banuelos* (2005) 130 Cal.App.4th 601, 607*; Monge v. California* (1998) 524 U.S. 721, 734.) Accordingly, we vacate Flores's sentence and remand to the trial court where the People may retry the prior conviction allegations, should they elect to do so.

       3. *Custody credits.*

       Flores contends the trial court improperly calculated his custody credits. He avers he was entitled to 1,516 days of actual custody credit for time spent in pretrial custody in jail and at Patton State Hospital, rather than the 899 days he was awarded. He further posits that because the People did not prove the prior "strike" conviction, the credit limitation contained in section 667, subdivision (c)(5) should not apply to him. The People counter that the record is inadequate to enable us to determine when Flores was confined in jail and when he was being treated at Patton State Hospital. Because error is never presumed (*People v. Davis* (1996) 50 Cal.App.4th 168, 172), the People contend Flores has failed to establish he is entitled to additional custody credits.

      Flores was either in jail or at Patton State Hospital for approximately four years, from the date of the first offense on July 22, 2006, until sentencing on September 10, 2010. Therefore, if he were to receive actual custody credit for all days during this period, the total would clearly exceed 899 days, the amount awarded. However, Flores was already in jail when he committed the instant offenses. Other charges in case No. TA090293, for attempted murder, were pending during at least a portion of the same period. Although neither party addresses the point, "[i]f an offender is in pretrial detention awaiting trial for two unrelated crimes, he ordinarily may receive credit for such custody against only one eventual sentence. Once the pretrial custody is credited against the sentence for one of the crimes, it, in effect, becomes part of the sentence, bringing the case within the embrace of the rule in [*In re Rojas* (1979)] 23 Cal.3d 152. In

12

such circumstances, the pretrial custody ceases to be 'attributable' to the second crime, thus prohibiting its being credited against the sentence subsequently imposed for that crime." (*In re Marquez* (2003) 30 Cal.4th 14, 21.) Similarly, "[a] defendant is not entitled to presentence custody credits when he or she is charged with a crime while already incarcerated and serving a sentence on a separate, earlier crime. [Citations.] The test is whether the defendant would have been free 'but for' his or her incarceration on the second crime." (*People v. Gisbert* (2012) 205 Cal.App.4th 277, 281.)

Here, the record is insufficient for us to determine how many days of Flores's actual custody were attributable to the instant crimes. Moreover, as discussed *ante*, we are remanding this matter for further proceedings on the prior conviction allegations, should the People so elect. Depending on the outcome of those proceedings, resentencing may be required in any event. Accordingly, because the record does not establish the custody credit calculations were incorrect, and because Flores may raise any purported miscalculation in his custody credits in the trial court on remand, we do not adjust the pretrial credits as Flores requests.

4. *Review of in camera <u>Pitchess</u> examination of peace officer records.*

Before trial, Flores sought discovery of peace officer personnel records pursuant to *Pitchess v. Superior Court, supra*, 11 Cal.3d 531. Flores's motion sought, as to eight deputies, information related to complaints of false arrest, fabrication of probable cause, "dishonesty, testifying falsely, falsification of police reports, use of excessive force, and planting evidence." The trial court found good cause for an in camera review of the records of Deputies Rangel, Jimenez, and Coss related to "falsification and fabrication of evidence." On June 13, 2007, the trial court conducted an in camera review and concluded no discoverable material existed. Flores requests that we review the sealed transcript of the trial court's *Pitchess* review to determine whether the court abused its discretion by failing to order disclosure of information. (See *People v. Mooc, supra*, 26 Cal.4th 1216; *People v. Myles* (2012) 53 Cal.4th 1181, 1208-1209.)

13

Trial courts are vested with broad discretion when ruling on motions to discover peace officer records (*People v. Samayoa* (1997) 15 Cal.4th 795, 827; *Haggerty v. Superior Court* (2004) 117 Cal.App.4th 1079, 1086), and we review a trial court's ruling for abuse (*People v. Mooc, supra*, 26 Cal.4th at p. 1228; *People v. Hughes* (2002) 27 Cal.4th 287, 330).  We have reviewed the sealed transcript of the in camera hearing conducted on June 13, 2007.  That transcript constitutes an adequate record of the trial court's review of any documents provided to it, and reveals no abuse of discretion. (*People v. Myles, supra,* 53 Cal.4th at pp. 1208-1209; *People v. Mooc*, *supra*, 26 Cal.4th at p. 1228; *Hughes*, at p. 330; *People v. Amperano* (2011) 199 Cal.App.4th 336, 344.)

DISPOSITION

Flores's sentence is vacated and the case is remanded for further proceedings consistent with this opinion.  In all other respects, the judgment is affirmed.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**




ALDRICH, J.


We concur:



CROSKEY, Acting P. J.




KITCHING, J.




15