Filed 2/18/21  In re Bruno-Martinez CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re JOSEPH BRUNO-MARTINEZ | C091819 |
| On Habeas Corpus. | (Super. Ct. No. 19HC00709) |

In 2008, a jury found petitioner Joseph Bruno-Martinez guilty of attempted murder after being given a modified kill zone instruction.  The jury also found petitioner guilty of discharging a firearm at an occupied vehicle and found true both crimes were committed for the benefit of a gang.  The trial court sentenced him to a determinate term of 27 years and an indeterminate term of 15 years to life.  We affirmed the judgment on appeal, and our Supreme Court denied review.  (*People v. Bruno-Martinez* (Mar. 30, 2010, C060660) [nonpub. opn.] (*Bruno-Martinez*).)

Petitioner filed a request in December 2019 for a writ of habeas corpus in the superior court based on our Supreme Court's clarification of the kill zone theory for attempted murder in *People v. Canizales* (2019) 7 Cal.5th 591.  The trial court denied the writ in February 2020.  Petitioner then filed in this court and we issued an order to show

1

cause why petitioner is not entitled to relief. The People filed a formal return and petitioner's counsel filed a traverse. We shall deny the petition.

FACTUAL AND PROCEDURAL BACKGROUND

We draw the underlying facts from *Bruno-Martinez*, *supra*, C060660. Petitioner confronted Roland Rosas outside of a restaurant after seeing what he thought was a gang tattoo on Rosas. Rosas denied any gang affiliation and walked to Carmen Miranda's car with Miranda and two other individuals when petitioner shot in the air and then began shooting at the car. Rosas and the others got out of the car and ran; no one was hit. At least seven shots were fired in total -- five from a .40-caliber gun and two from a .45-caliber gun. The car was hit multiple times and one of the windows was shattered. (*Bruno-Martinez*, *supra*, C060660 at pp. 2-3.)

Petitioner was charged with the attempted murder of Rosas with enhancements for personal use of a firearm and commission of the offense for the benefit of a gang. He was also charged with shooting at an occupied vehicle and also with a gang enhancement. (*Bruno-Martinez*, *supra*, C060660 at p. 1.)

At trial, the court indicated to counsel it would provide the CALCRIM No. 600 jury instruction for attempted murder without the optional paragraph relating to a kill zone theory. The parties agreed and the prosecutor indicated he was not pursuing a kill zone theory. Consequently, the jury was instructed that for attempted murder, the People must prove: (1) the petitioner took direct but ineffective steps toward killing another person, and (2) petitioner intended to kill another person. (*Bruno-Martinez*, *supra*, C060660 at pp. 4-5.)

During deliberations, the jury asked: " 'On Count 1 do we have the discretion to find guilty of attempted murder charges without specifying [Rosas]?' " After discussion with counsel, the trial court responded: " 'No. The victim alleged in the charge is "[Rosas]." However, you may consider the following instruction of law as a supplement to Instruction 600.' " The court then instructed the jury as follows: " 'A person may

2

intend to kill a specific victim or victims and at the same time intend to kill anyone in a particular zone of harm or "kill zone." In order to convict the defendant of the attempted murder of [Rosas], the People must prove that the defendant not only intended to kill anyone in [Miranda]'s car but also either intended to kill [Rosas], or intended to kill anyone within the kill zone. If you have a reasonable doubt whether the defendant intended to kill [Rosas] by harming everyone in the kill zone, then you must find the defendant not guilty of the attempted murder of [Rosas].' " (*Bruno-Martinez*, *supra*, C060660 at pp. 5-6.)

The jury found petitioner guilty on both charges and found true all enhancements. Petitioner was sentenced on the attempted murder charge to a determinate middle term of seven years, plus 20 years for the weapon enhancement. On the charge of shooting at an occupied vehicle, petitioner received a consecutive, indeterminate term of 15 years to life by virtue of the gang enhancement. (*Bruno-Martinez*, *supra*, C060660 at p. 4.)

Petitioner appealed, arguing, inter alia, the kill zone instruction was inappropriate because he was charged with a single count of attempted murder of a specific victim. He also claimed the instruction eliminated the specific intent to kill Rosas, the named victim. We rejected this argument, reasoning the kill zone instruction given provided the jury two options for finding intent to kill: "Either defendant intended to kill [Rosas], or he intended to kill all four people in a group that included [Rosas]." (*Bruno-Martinez*, *supra*, C060660 at p. 10.)

In December 2019, petitioner filed a habeas petition in the trial court in the first instance, arguing the kill zone instruction does not meet the requirements articulated in *Canizales*. The trial court denied the petition, finding any error was harmless beyond a reasonable doubt. Petitioner then filed an original petition for writ of habeas corpus in this court, the People filed an informal response at our request, and petitioner filed a reply. In June 2020, we issued an order to show cause, the People filed a return in August, and petitioner filed a traverse in September.

3

Petitioner argues the modified kill zone instruction does not satisfy the analysis articulated in *Canizales* and this error is prejudicial. Respondent concedes the kill zone instruction was improper but not under *Canizales* and any error was harmless.[1] We agree with the People.

I

*Legal Standards*

A conviction for attempted murder requires a showing of a "specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing." (*People v. Lee* (2003) 31 Cal.4th 613, 623.) "Because direct evidence of a defendant's intent rarely exists, intent may be inferred from the circumstances of the crime and the defendant's acts." (*People v. Sánchez* (2016) 63 Cal.4th 411, 457.) Whether a defendant acted with such intent is a question for the trier of fact that can be proven by either direct or circumstantial evidence. (*People v. Lashley* (1991) 1 Cal.App.4th 938, 945-946.)

Transferred intent is insufficient for an attempted murder conviction. "To be guilty of attempted murder, the defendant must intend to kill the alleged victim, not someone else. The defendant's mental state must be examined as to each alleged attempted murder victim. Someone who intends to kill only one person and attempts unsuccessfully to do so, is guilty of the attempted murder of the intended victim, but not of others." (*People v. Bland* (2002) 28 Cal.4th 313, 328.)

A concurrent intent, however, is sufficient for an attempted murder conviction. When the defendant intends to kill a specific target and employs a means of attack

---

[1] Respondent also argues *Canizales* is not retroactive and the claim is procedurally barred because: (a) it is an insufficient evidence claim; and (b) we have already ruled on this exact issue. Because we address and reject petitioner's argument on its merits, we need not reach these contentions.

designed to kill everyone in the vicinity of the target in order to ensure the death of the target, the defendant creates a "kill zone" around the target, and the jury may reasonably infer the defendant possesses the concurrent intent to kill everyone within the kill zone. (*People v. Bland*, *supra*, 28 Cal.4th at pp. 326-327, 329-330.) " 'The intent is concurrent . . . when the nature and scope of the attack, while directed at a primary victim, are such that we can conclude the perpetrator intended to ensure harm to the primary victim by harming everyone in that victim's vicinity.' " (*Id.* at p. 330.)

Our Supreme Court in *Canizales* refined the circumstances for the appropriate use of a kill zone theory. (*People v. Canizales*, *supra*, 7 Cal.5th at p. 591.) In *Canizales*, two gang members were convicted of attempted murder of rival gang members under the kill zone theory after shooting into an outdoor block party from 100-160 feet away. (*Id.* at pp. 599-601.) At trial, the jury was instructed on attempted murder with CALCRIM No. 600 with a standard kill zone instruction permitting it to convict of attempted murder of the named victim if the defendant "not only intended to kill . . . [the primary target] but also either intended to kill . . . [the named victim], or intended to kill everyone within the kill zone." (*Canizales*, at p. 601 & fn. 3.) But there was no definition of what constituted a kill zone beyond reference to a " 'particular zone of harm.' " (*Id.* at p. 613.)

After reviewing the history of the kill zone theory, the court found the intent to kill a primary target is the focus of the theory. It concluded, "the kill zone theory for establishing the specific intent to kill required for conviction of attempted murder may properly be applied only when a jury concludes: (1) the circumstances of the defendant's attack on a primary target, including the type and extent of force the defendant used, are such that the only reasonable inference is that the defendant intended to create a zone of fatal harm -- that is, an area in which the defendant intended to kill everyone present to ensure the primary target's death -- around the primary target; and (2) the alleged attempted murder victim who was not the primary target was located within that zone of harm. Taken together, such evidence will support a finding that the defendant harbored

5

the requisite specific intent to kill both the primary target and everyone within the zone of fatal harm." (*People v. Canizales*, *supra*, 7 Cal.5th at p. 607.)

The court emphasized throughout the opinion that "trial courts must exercise caution when determining whether to permit the jury to rely upon the kill zone theory. Indeed, we anticipate there will be relatively few cases in which the theory will be applicable and an instruction appropriate." (*People v. Canizales*, *supra*, 7 Cal.5th at p. 608.) Instead, "trial courts should reserve the kill zone theory for instances in which there is sufficient evidence from which the jury could find that the *only* reasonable inference is that the defendant intended to kill (not merely to endanger or harm) everyone in the zone of fatal harm." (*Id*. at p. 597.)

Applying this standard to the facts before it, the court reversed the convictions. First, it found "the evidence concerning the circumstances of the attack (including the type and extent of force used by [co-defendant]) was not sufficient to support a reasonable inference that defendants intended to create a zone of fatal harm around a primary target." (*People v. Canizales*, *supra*, 7 Cal.5th at p. 610.) Second, this error was prejudicial under any standard because "[t]he court's error in instructing on the factually unsupported kill zone theory, combined with the lack of any clear definition of the theory in the jury instruction as well as the prosecutor's misleading argument, could reasonably have led the jury to believe that it could find that defendants intended to kill [the victim] based on a legally inaccurate version of the kill zone theory -- that is, that defendants could be found guilty of the attempted murder of [the named victim] if [codefendant] shot at [the primary target] knowing there was a substantial danger he would also hit [the named victim]." (*Id*. at p. 614.)

## II

### *Analysis*

We agree with the parties the kill zone instruction was erroneous. Rosas was the named victim for the attempted murder charge and the court confirmed this in response to

6

the jury's question.  Yet the supplementary kill zone instruction treated everyone in Miranda's car as the primary target.  Because Rosas was in the car, the instruction treated Rosas as both a primary target and the named victim.

This error, however, was harmless regardless of which prejudice standard is applied.  (See *People v. Guiton* (1993) 4 Cal.4th 1116, 1129-1130 [*Watson* error test applies when instruction correctly states law but does not factually apply]; *People v. Aledamat* (2019) 8 Cal.5th 1, 13 [*Chapman* error test applies when instruction on a legal liability theory is legally inadequate].)  The instruction required the jury to find petitioner had the specific intent to kill Rosas, regardless of a kill zone.  So, the jury necessarily found the specific intent required for attempted murder of Rosas even with the erroneous supplementary instruction.

Breaking up the instruction will help elucidate this point.  The jury in petitioner's case was told, in the supplementary kill zone instruction, that to convict petitioner of attempted murder of Rosas, the named victim in the charge, it had to find:  (1) petitioner not only intended to kill everyone[2] in the car *but also* (2) *either* intended to kill (a) Rosas or (b) everyone in the kill zone.  The instruction's first step required the jury to find petitioner intended to kill Rosas to convict him of attempted murder because *Rosas was in the car*.

This is not a typical kill zone instruction because this was not a kill zone case.  As seen in *Canizales* and other kill zone cases, the instruction should require the jury to find the defendant:  (1) not only intended to kill the primary target but also (2) intended to kill

---

**2**      The instruction says "anyone" in Miranda's car, but as we pointed out in petitioner's direct appeal, the jury likely understood "anyone" as used in the instruction to mean "everyone."  (*Bruno-Martinez*, *supra*, C060660 at p. 5; see *People v. Stone* (2009) 46 Cal.4th 131, 138, fn. 3 ["a jury hearing about the intent to kill *anyone* within the kill zone would probably interpret it as meaning the intent to kill *any* person who happens to be in the kill zone, i.e., *everyone* in the kill zone"].)  Though petitioner challenged this understanding in his direct appeal, he does not reraise this argument here.

(a) the named victim or (b) everyone within the kill zone. (See *Canizales*, *supra*, 7 Cal.5th at p. 601 & fn. 3; see CALCRIM No. 600.) What constitutes a kill zone is fundamental in these cases because a jury must find the second prong satisfied and this could be satisfied based on finding the creation of a kill zone. This is what *Canizales* analyzed but is not an issue here because *Rosas was the primary target*. Even if the jury did find petitioner created a kill zone, and this finding is insufficient after *Canizales*, it still necessarily and properly found in the first prong a specific intent to kill Rosas. The error of the instruction effectively eliminated the need to find petitioner created a kill zone. Thus, as we found in petitioner's direct appeal, the jury either found: (1) an intent to kill Rosas or (2) an intent to kill everyone in the car, including Rosas. This satisfies the intent requirement for an attempted murder conviction.

## DISPOSITION

The order to show cause is discharged and the petition for writ of habeas corpus is denied.

/s/_____
Robie, J.

We concur:

/s/_____
Raye, P. J.

/s/_____
Murray, J.

8