Filed 10/26/23; Certified for Publication & Modified 11/20/23 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE, | 2d Crim. No. B324207 |
| Plaintiff and Respondent, | (Super. Ct. No. BA381310) |
| v. | (Los Angeles County) |
| CHARLES JOSEPH ALLEN, | |
| Defendant and Appellant. | |

Charles Joseph Allen appeals from the denial of his petition for resentencing pursuant to Penal Code[1] section 1172.6. He contends the trial court erroneously denied his petition at the prima facie stage because the record of conviction shows that jurors were instructed on now-invalid theories of murder and attempted murder at trial. We affirm.

FACTUAL AND PROCEDURAL HISTORY

After a member of his gang was shot, Allen drove three of his fellow gang members into their rival gang's territory, looking

---

[1] Unlabeled statutory references are to the Penal Code.

for people to shoot.[2]  (*People v. Allen* (Nov. 28, 2017, B270724) [nonpub. opn.] [2017 WL 5711791 at p. *1] (*Allen*).[3])  When they arrived, Allen and his accomplices saw two men they believed to be rival gang members, Darnell Jackson and Jeremy Owens. (*Ibid.*)  Allen's accomplices got out of the car, walked down the street, and shot the men, killing Jackson.  (*Id.* at pp. *1-2.) Neither Jackson nor Owens was a gang member.  (*Id.* at p. *1.)

Prosecutors charged Allen with the murder of Jackson and the attempted murder of Owens, alleging he was liable as either an aider and abettor or a coconspirator.  As to the former theory of liability, the trial court instructed jurors that "[a] person is guilty of a crime whether [they] committed it personally or aided and abetted the perpetrator."  (See CALCRIM No. 400.)  The court also told jurors that a direct aider and abettor must share the perpetrator's intent: "Someone aids and abets a crime if [they] know[] of the perpetrator's unlawful purpose and [they] specifically intend[] to and do[] in fact aid, facilitate, promote,

---

[2] We provide this factual and procedural history to shed light on prosecutors' theory of the case at trial and the factual questions the jury had to decide.  By providing this background, we do not suggest that the trial court was permitted to weigh disputed evidence when considering whether to grant Allen's section 1172.6 petition.  (See *People v. Lewis* (2021) 11 Cal.5th 952, 971 (*Lewis*) [petition may be denied at prima facie stage only when clearly meritless as a matter of law].)

[3] Because it is unnecessary to the resolution of this appeal, we deny the Attorney General's request to take judicial notice of the record in Allen's prior appeal.  (*People v. Brewer* (2015) 235 Cal.App.4th 122, 143.)

2

encourage[,] or instigate the perpetrator's commission of that crime." (See CALCRIM No. 401.)

As to the latter theory of liability, the trial court instructed jurors pursuant to CALCRIM NO. 416:

> "To prove that [Allen] was a member of a conspiracy in this case, [prosecutors] must prove that:
>
> "1. [Allen] intended to agree and did agree with one or more of [his alleged coconspirators] to commit murder;
>
> "2. At the time of the agreement, [Allen] and one or more of the other alleged members of the conspiracy intended that one or more of them would commit murder; [and]
>
> "3. [Allen or one of his alleged coconspirators] or all of them committed at least one . . . overt act[] to accomplish murder[.]"

The instruction also told jurors that prosecutors "must prove that the members of the alleged conspiracy had an agreement and intent to commit murder."

CALCRIM No. 417 then told jurors that, if Allen was a member of a conspiracy, he was responsible for any crimes he conspired to commit, no matter which of his coconspirators committed the crime:

> "A member of a conspiracy is . . . criminally responsible for any act of any member of the conspiracy if that act is done to further the conspiracy and that act is a natural and probable consequence of the common plan or design of the

3

conspiracy. This rule applies even if the act was not intended as part of the original plan.

"A natural and probable consequence is one that a reasonable person would know is likely to happen if nothing unusual intervenes. . . .

[¶] . . . [¶]

"To prove that [Allen] is guilty of [attempted murder as a coconspirator], [prosecutors] must prove that:

"1. [Allen] conspired to commit . . . murder;

"2. A member of the conspiracy committed attempted murder to further the conspiracy;

"AND

"3. Attempted [m]urder was a natural and probable consequence of the common plan or design of the crime that the defendant conspired to commit."

The trial court did not instruct jurors on felony murder (CALCRIM Nos. 540A-540C) or the natural and probable consequences theory (CALCRIM No. 403). Jurors later convicted Allen of the first degree murder of Jackson (§§ 187, subd. (a), 189, subd. (a)) and the attempted willful, deliberate, and premeditated murder of Owens (§§ 664/187, subd. (a)). We affirmed the judgment on appeal. (*Allen, supra*, 2017 WL 5711791 at p. *6.)

In October 2021, Allen petitioned for resentencing pursuant to section 1172.6. The trial court appointed counsel and set the matter for a prima facie hearing.

4

The prosecutor opposed Allen's petition because the jury was not instructed on felony murder, natural and probable consequences, or any other theory of culpability that imputed malice to Allen. He was thus ineligible for section 1172.6 relief as a matter of law.

At the prima facie hearing, the trial court agreed that jurors had not been instructed on either felony murder or the natural and probable consequences doctrine. Nor were "they . . . instructed that any kind of malice [could] be imputed to [Allen]." It thus found him ineligible for section 1172.6 resentencing and denied his petition.

DISCUSSION

In 2018, the Legislature enacted Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437) to "amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who [was] not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) To accomplish these goals, Senate Bill 1437 redefined "malice" in section 188, and narrowed the classes of persons liable for felony murder under section 189. (Stats. 2018, ch. 1015, §§ 2-3.) It also added what is now section 1172.6 to the Penal Code, which permitted those convicted of felony murder or murder under a natural and probable consequences theory to petition to have their murder convictions vacated and to be resentenced on any remaining counts. (Stats. 2018, ch. 1015, § 4; see also Stats. 2022, ch. 58, § 10 [renumbering former section 1170.95 as section 1172.6 without substantive change].) This relief was subsequently

5

extended to persons convicted of manslaughter and attempted murder. (See Stats. 2021, ch. 551, § 2.)

A person may now petition for resentencing if: (1) the information allowed prosecutors to "proceed under a theory of felony murder, murder under the natural and probable consequences doctrine[,] or [any] other theory under which malice is imputed to a person based solely on [their] participation in a crime, or attempted murder under the natural and probable consequences doctrine"; (2) the person was convicted of murder, manslaughter, or attempted murder; and (3) the person could not now be convicted of murder or attempted murder under the current versions of sections 188 and 189. (§ 1172.6, subd. (a).) If a person files a facially valid petition, the trial court must appoint counsel, if requested, and set the matter for a prima facie hearing. (*Id.*, subds. (b)(3) & (c).) At that hearing the court may rely on the record of conviction[4] and deny a petition if the petitioner is ineligible for section 1172.6 relief as a matter of law. (*Lewis, supra,* 11 Cal.5th at pp. 970-972.)

A petitioner is ineligible for section 1172.6 relief as a matter of law if, for example, the jury instructions show that jurors were not instructed on any theory of liability affected by Senate Bill 1437's changes to sections 188 and 189. (*People v. Daniel* (2020) 57 Cal.App.5th 666, 677.) A petitioner is also ineligible for relief if the record of conviction shows that their conviction was based on a theory of liability that remains valid under Senate Bill 1437. (*People v. Medrano* (2021) 68 Cal.App.5th 177, 182-183.) We review de novo a trial court's

---

[4] Prior appellate opinions and the jury instructions given at trial are part of the record of conviction. (*People v. Lopez* (2022) 78 Cal.App.5th 1, 13.)

6

prima facie determination that a petitioner is ineligible for section 1172.6 relief as a matter of law.  (*People v. Williams* (2022) 86 Cal.App.5th 1244, 1251 (*Williams*).)

The trial court here correctly concluded that Allen was ineligible for section 1172.6 relief as a matter of law.  The court instructed jurors on two theories of liability at trial: direct aiding and abetting, and conspiracy.  If the jury adopted the former theory, Allen was ineligible for section 1172.6 relief because jurors would have had to conclude that he harbored the intent to kill.  (*Williams*, *supra*, 86 Cal.App.5th at p. 1252.)

The same is true if jurors convicted him of murder and attempted murder on a conspiracy theory.  "[C]onspiracy is a specific intent crime requiring an intent to agree or conspire, and a further intent to commit the target crime, here murder, the object of the conspiracy."  (*People v. Swain* (1996) 12 Cal.4th 593, 602.)  The trial court instructed jurors on these principles: It told jurors that, to convict Allen of Jackson's murder as a coconspirator, prosecutors had to show that he "intended to agree and did agree with one or more of [his alleged coconspirators] to commit murder" and that "[a]t the time of [that] agreement, [he] and one or more of the other alleged members of the conspiracy *intended that one or more of them would"* do so.  (Italics added.)  The court also told jurors that convicting Allen on a conspiracy theory required prosecutors to show that he "had an agreement and *intent to commit murder*."  (Italics added.)

To convict Allen of the attempted murder of Owens as a coconspirator, the trial court told jurors that they had to conclude that Allen conspired to commit murder.  That, in turn, required them to find that he harbored the intent to kill.  (*People v. Whitson* (2022) 79 Cal.App.5th 22, 31-32 (*Whitson*); see also

7

*People v. Beck & Cruz* (2019) 8 Cal.5th 548, 642 ["conspiracy to commit murder may not be based on a theory of implied malice"].) "There is thus no possibility [Allen was] found guilty of murder [or attempted murder] on a natural and probable consequences theory," as he contends. (*Beck & Cruz*, at p. 645.) Denial of his section 1172.6 petition was proper. (*Whitson*, at p. 32.)

Allen counters that the instructions did not require jurors to conclude that he and his alleged coconspirators ever discussed killing non-rival gang members or that killing Jackson and Owens was part of their plan. But " 'the intent to kill need not be directed at a specific person.' " (*People v. Stone* (2009) 46 Cal.4th 131, 139 (*Stone*).) " 'The social harm of murder is the "killing of a human being by another human being." ' " (*Ibid.*) " 'The requisite intent, therefore, is the intent to kill *a,* not a specific, human being.' " (*Ibid.*) Thus, under current California law, "conspiracy to commit murder may be based on an agreement to kill ' "a human being" ' who is not specifically identified." (*Whitson*, *supra*, 79 Cal.App.5th at p. 33, fn. 9.) That Allen and his coconspirators did not conspire to kill Jackson and Owens *specifically* is not relevant.

*In re Brigham* (2016) 3 Cal.App.5th 318 (*Brigham*), on which Allen relies, is inapposite. The *Brigham* defendant was charged with aiding and abetting the murder of a man who may not have been his and his accomplices' intended target. (*Id.* at p. 324.) At trial, the court instructed the jury on the natural and probable consequences theory of first degree premeditated murder that was subsequently invalidated by the Supreme Court in *People v. Chiu* (2014) 59 Cal.4th 155, with both the target and non-target offenses being murder, and the doctrine of transferred

8

intent. (*Brigham*, at p. 327.) It convicted the defendant of first degree murder. (*Id.* at p. 322.)

Our colleagues in the First District reversed, concluding that the trial court committed prejudicial instructional error because the natural and probable consequences doctrine gave the jury a faulty path to convict the defendant of first degree murder. (*Brigham*, *supra*, 3 Cal.App.5th at p. 327-328, 333.) The jury could have convicted the defendant as a direct aider and abettor on the still-valid theory of transferred intent by rejecting his claim that he knew the victim was not the intended target and tried to stop the shooter—i.e., by finding that he aided in the murder of the wrong person. (*Id.* at pp. 327-328.) But the jury also could have believed the defendant's claim and convicted him "if it believed that a reasonable person, knowing what [the defendant] knew about the situation and about [the shooter], would or should have known it was reasonably foreseeable that [the shooter] would commit a premeditated murder of a different victim." (*Id.* at p. 328.) Under *Chiu*, that is not permitted. (*Brigham*, at p. 329.)

Unlike the situation in *Brigham*, nothing in the instructions given here permitted jurors to conclude that the murder of Jackson was a natural and probable consequence of a plan to kill Owens or any other intended victim. The instructions did permit jurors to find that the attempted murder of Owens was the natural and probable consequence of another crime Allen conspired to commit, but that crime was murder. As set forth above, to find that Allen conspired to commit murder required jurors to find that he harbored the intent to kill. And "a person who intends to kill can be guilty of attempted murder even if [they have] no specific target in mind." (*Stone*, *supra*, 46 Cal.4th

9

at p. 140.)  "An indiscriminate would-be killer is just as culpable as one who targets a specific person."  (*Ibid*.)

It was also not reasonably likely that jurors imputed malice to Allen for the attempted murder of Owens.  (Cf. *People v. Estrada* (2022) 77 Cal.App.5th 941, 947 [reasonable likelihood test applies when analyzing whether jury instructions render a petitioner eligible for relief at prima facie stage of section 1172.6 proceeding].)  To do so, jurors would have had to: (1) find that Allen intended to kill someone, but no one in particular; (2) find that Allen's coconspirators intended to kill Jackson and Owens, and Jackson and Owens in particular; and (3) impute the coconspirators' intent to kill Jackson and Owens to Allen.  Allen points to nothing in the evidence or jury instructions that would have suggested such a theory.  It is not reasonably likely the jury adopted it.  (*Estrada*, at pp. 948-949.)

*Whitson*, *supra*, 79 Cal.App.5th 22, also does not assist Allen.  In that case, prosecutors argued the defendant was ineligible for section 1172.6 relief because jurors convicted him of conspiracy to commit murder.  (*Whitson*, at p. 31.)  During jury instructions, however, the trial court neglected to tell jurors that the conspiracy conviction required finding that the defendant had the intent to kill.  (*Id.* at pp. 31-32.)  Here, in contrast, CALCRIM No. 417 told jurors that, to convict Allen of attempted murder, they had to find that he conspired to commit murder.  And CALCRIM No. 416 told jurors that finding Allen conspired to commit murder required finding that he had the intent to kill. Denial of his section 1172.6 petition was therefore proper.

10

DISPOSITION

The trial court's order denying Allen's petition for resentencing pursuant to Penal Code section 1172.6, entered August 12, 2022, is affirmed.

NOT TO BE PUBLISHED.


BALTODANO, J.


We concur:


GILBERT, P. J.


YEGAN, J.

11

Eleanor J. Hunter, Judge

Superior Court County of Los Angeles

_____

Danalynn Pritz, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and David A. Wildman, Deputy Attorneys General, for Plaintiff and Respondent.

Filed 11/20/23

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>CHARLES JOSEPH ALLEN,<br><br>  Defendant and Appellant. | 2d Crim. No. B324207<br>(Super. Ct. No. BA381310)<br>(Los Angeles County)<br><br>ORDER MODIFYING OPINION AND CERTIFYING OPINION FOR PUBLICATION [NO CHANGE IN JUDGMENT] |

THE COURT:

It is ordered that the opinion filed herein on October 26, 2023, be modified as follows:

1. On page 1, the following paragraph is inserted as the first paragraph in the opinion:

> A person who conspires to commit murder harbors the intent to kill. But they need not harbor the intent to kill a specific victim. So long as they intend to kill a human

being, they are ineligible for Penal Code[5] section 1172.6 resentencing as a matter of law.

2.  On page 1, first sentence of the first paragraph, the words "Penal Code" and footnote 1 are deleted so that the sentence reads:

> Charles Joseph Allen appeals from the denial of his petition for resentencing pursuant to section 1172.6.

The opinion in the above-entitled matter filed on October 26, 2023, was not certified for publication in the Official Reports. For good cause, it now appears that the opinion should be published in the Official Reports and it is so ordered.

There is no change in judgment.

_____

GILBERT, P. J.          YEGAN, J.          BALTODANO, J.

---

[5] Unlabeled statutory references are to the Penal Code.

14