Filed 4/8/25  P. v. Wallace CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B334126 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA094372) |
| v. | |
| ALPHONSO WALLACE, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Tammy Chung Ryu, Judge.  Affirmed.

Sharon Fleming, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, and Analee J. Brodie, Deputy Attorney General, for Plaintiff and Respondent.

# INTRODUCTION

In 2008 a jury convicted Alphonso Wallace on one count of first degree murder and five counts of attempted murder. In 2022 Wallace filed a petition for resentencing under Penal Code section 1170.95 (now section 1172.6).[1] The superior court ruled Wallace failed to state a prima facie case for relief and denied the petition without issuing an order to show cause. Wallace argues he made a prima facie showing he was eligible for resentencing on three of his attempted murder convictions because he was convicted of committing those crimes under a "kill zone" theory of liability that, he says, allowed the jury to impute malice to him. We affirm.

# FACTUAL AND PROCEDURAL BACKGROUND

A. *A Jury Convicts Wallace of First Degree Murder and Attempted Murder, and We Affirm*

We described much of the factual background of this case in Wallace's direct appeal. (See *People v. Wallace* (Jan. 17, 2012, B216931) [nonpub. opn.] (*Wallace I*).) On November 21, 2007 Llewelyn Miller, Damone Johnson, La Tonya Strattion, James Eddings, Marion Cantlope, and two other people were in the garage and driveway of Cantlope's home. The garage door was open. As Miller walked down the driveway to cross the street, a car with its windows halfway down drove up and stopped in front of him. Someone in the car asked, "What's up, cuz?" When Miller leaned in to see who was in the car, two shooters began firing,

---

[1] Statutory references are to the Penal Code.

2

one from the driver's window and another from the passenger's window. Miller ran back toward the garage. Five bullets hit his torso and legs, and two bullets grazed his head. Johnson was shot in the head and leg; he fell in the driveway. After the shooting there was blood and a bullet hole in the bumper of Strattion's car, which was parked in the driveway. Johnson died from the gunshot wound to his head, and Miller was seriously injured. No one else was hit. The next day police recovered the shooters' car near the home of Wallace's grandparents. Wallace confessed he participated in the shooting. (*Ibid.*)

A jury convicted Wallace on one count of first degree murder (§ 187, subd. (a)) (count 6) and four counts of attempted murder (§§ 187, subd. (a), 664) (counts 7 through 10) for the November 21, 2007 shootings. On the attempted murder convictions the jury found true allegations Wallace attempted to commit the murders willfully, deliberately, and with premeditation. The jury also found true gang and firearm allegations.[2] The trial court sentenced Wallace to an aggregate prison term of 90 years to life, plus four life terms with a minimum parole eligibility of 15 years. We affirmed the judgment. (*Wallace I, supra*, B216931.)

---

[2] The jury also convicted Wallace on one count of attempted murder (count 4) and one count of shooting at an inhabited dwelling (§ 246) (count 5), and found true gang and firearm allegations, for a shooting on November 5, 2007. The jury found Wallace not guilty on counts 1, 2, and 3 for a shooting on November 30, 2007.

3

B.    *The Superior Court Denies Wallace's Petition for Resentencing Under Section 1172.6*

In March 2022 Wallace filed a petition for resentencing under section 1172.6, checking boxes on a form petition stating he was eligible for relief and asking the court to appoint counsel to represent him. The superior court appointed counsel, and the parties submitted briefs. The People argued that Wallace was prosecuted as a direct perpetrator who acted with actual malice and that the jury was not instructed on felony murder or the natural and probable consequences doctrine. The People submitted the jury instructions given at Wallace's trial and our unpublished opinion in Wallace's direct appeal. Wallace argued that the jury was instructed on the kill zone theory, which was "almost completely done away with in" *People v. Canizales* (2019) 7 Cal.5th 591, and that he had made a prima facie showing he was eligible for relief under section 1172.6.

At the hearing the superior court stated it had reviewed the record of conviction, including the jury instructions. The court asked the prosecutor to respond to Wallace's argument about the kill zone theory, and the prosecutor argued a petition under section 1172.6 was not a "well-founded vehicle to address kill zone" because under that theory "the perpetrator or the aider or abettor must intend to kill someone."

The superior court denied Wallace's petition without issuing an order to show cause. The court stated that the jury was not instructed on felony murder or the natural and probable consequences doctrine and that it was "readily ascertainable from the record without weighing any evidence or exercising any discretion that Mr. Wallace is ineligible."

4

Wallace timely appealed.  He challenges the superior court's ruling he was ineligible for resentencing on his attempted murder convictions on counts 8, 9, and 10; he does not challenge the court's ruling on his other convictions.

**DISCUSSION**

A.    *Applicable Law and Standard of Review*

Effective 2019, the Legislature substantially modified the law governing accomplice liability for murder by eliminating the natural and probable consequences doctrine as a basis for finding a defendant guilty of murder and significantly narrowing the felony-murder exception to the malice requirement for murder. (*People v. Patton* (2025) 17 Cal.5th 549, 558; *People v. Arellano* (2024) 16 Cal.5th 457, 467-468; *People v. Curiel* (2023) 15 Cal.5th 433, 448-449; see *People v. Strong* (2022) 13 Cal.5th 698, 707-708 [felony murder]; *People v. Gentile* (2020) 10 Cal.5th 830, 842-843 [natural and probable consequences].)  Section 188, subdivision (a)(3), now prohibits imputing malice based solely on a person's participation in a crime and requires proof of malice to convict a defendant of murder, except under the revised felony-murder rule.  (§§ 188, subd. (a)(3), 189, subd. (e); *Arellano*, at pp. 467-468; *Curiel*, at p. 499.)  Effective 2022, the Legislature amended section 1172.6 to apply to persons convicted of "attempted murder under the natural and probable consequences doctrine."  (§ 1172.6, subd. (a); see *People v. Delgadillo* (2022) 14 Cal.5th 216, 223, fn. 3; *People v. Rodriguez* (2024) 103 Cal.App.5th 451, 457.)

Section 1172.6 authorizes a person convicted of felony murder, murder under the natural and probable consequences

doctrine, or attempted murder under the natural and probable consequences doctrine, to petition the superior court to vacate the conviction and resentence the defendant on any remaining counts if he or she could not now be convicted of murder or attempted murder because of the legislative changes to the definitions of murder.  (See *People v. Arellano*, *supra*, 16 Cal.5th at pp. 468-469; *People v. Curiel*, *supra*, 15 Cal.5th at pp. 449-450.)  If a section 1172.6 petition contains all the required information, the court must appoint counsel to represent the petitioner if requested.  (§ 1172.6, subd. (b)(1)(A), (b)(3); *People v. Lewis* (2021) 11 Cal.5th 952, 962-963; *People v. Foley* (2023) 97 Cal.App.5th 653, 659.)  The People must file a response to the petition, the petitioner may file a reply, and the court must hold a hearing to determine whether the petitioner has made a prima facie showing he or she is entitled to relief.  (§ 1172.6, subd. (c); see *People v. Patton*, *supra*, 17 Cal.5th at p. 556.)

In deciding whether a petitioner has made a prima facie showing for relief under section 1172.6, "'"the court takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved.  If so, the court must issue an order to show cause."'"  (*People v. Lewis*, *supra*, 11 Cal.5th at p. 971; see *People v. Curiel*, *supra*, 15 Cal.5th at pp. 463-464.)  The court may consider the record of conviction, which will "necessarily inform the trial court's prima facie inquiry under section [1172.6], allowing the court to distinguish petitions with potential merit from those that are clearly meritless."  (*Lewis*, at p. 971; see *Curiel*, at pp. 463-464.)  "In reviewing any part of the record of conviction at this preliminary juncture, a trial court should not engage in 'factfinding involving

the weighing of evidence or the exercise of discretion.'" (*Lewis*, at p. 972; see *People v. Patton*, *supra*, 17 Cal.5th at p. 563; *People v. Gallardo* (2024) 105 Cal.App.5th 296, 301.) "'If the petition and record in the case establish conclusively that the defendant is ineligible for relief, the trial court may dismiss the petition. [Citation.] If, instead, the defendant has made a prima facie showing of entitlement to relief, "the court shall issue an order to show cause." (§ 1172.6, subd. (c).)'" (*People v. Arellano*, *supra*, 16 Cal.5th at p. 469.) We independently review an order denying a petition under section 1172.6 without issuing an order to show cause. (*People v. Flores* (2023) 96 Cal.App.5th 1164, 1170, disapproved on another ground in *Patton*, at p. 569 & fn. 12; *People v. Bodely* (2023) 95 Cal.App.5th 1193, 1200.)

B. *The Superior Court Did Not Err in Denying Wallace's Petition Under Section 1172.6*

A defendant convicted of attempted murder is eligible for relief under section 1172.6 only if he or she is convicted "under the natural and probable consequences doctrine." (§ 1172.6, subd. (a); see *People v. Rodriguez*, *supra*, 103 Cal.App.5th at p. 457 [section 1172.6 "applies 'only to attempted murders based on the natural and probable consequences doctrine'"]; *People v. Lovejoy* (2024) 101 Cal.App.5th 860, 865 [same]; *People v. Coley* (2022) 77 Cal.App.5th 539, 548 [same].) The jury in Wallace's trial did not convict him of attempted murder under the natural and probable consequences doctrine: The trial court did not instruct the jury on that theory. (See *Coley*, at p. 548 [defendant was not entitled to relief where the jury was instructed on direct aiding and abetting, but not on the natural and probable consequences doctrine]; *People v. Cortes* (2022) 75 Cal.App.5th

7

198, 203 [defendant "could not demonstrate that he was convicted of either murder or attempted murder under the natural and probable consequences doctrine because the jury was not instructed on that theory of liability"].) Therefore, the jury instructions conclusively established Wallace was ineligible for relief under section 1172.6 as a matter of law. (See *People v. Nguyen* (2024) 103 Cal.App.5th 668, 677 ["In making the prima facie determination, the court may rely on the record of conviction, including the jury instructions and verdict forms."]; *People v. Soto* (2020) 51 Cal.App.5th 1043, 1055 [the superior court may "rely on the jury instructions, which are part of the record of conviction, in assessing the prima facie showings under section [1172.6]"]; see also *People v. Patton*, *supra*, 17 Cal.5th at p. 564 ["Conclusory allegations, such as checkbox ones . . ., are particularly subject to refutation by the record of conviction."].)

Wallace concedes the trial court did not instruct the jury on the natural and probable consequences doctrine. Instead, relying on excerpts of legislative history, he argues the Legislature intended section 1172.6 to apply not only to "'attempted murder under the natural and probable consequences doctrine,'" as the statute says, but also to attempted murder under "'*any other theory under which malice is imputed to the person based solely on their participation in a crime.*'" The plain language of section 1172.6 contradicts Wallace's proposed interpretation.

As originally enacted, the predecessor to section 1172.6 applied to any "person convicted of felony murder or murder under a natural and probable consequences theory . . . ." (Former § 1170.95, added by Stats. 2018, ch. 1015, § 4.) The Legislature amended the statute to apply to any "person convicted of felony murder or murder under the natural and probable consequences

8

doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, *attempted murder under the natural and probable consequences doctrine*, or manslaughter . . . ." (Former § 1170.95, as amended by Stats. 2021, ch. 551, § 2, italics added.) Thus, section 1172.6 as amended applies to defendants convicted of *murder* under a theory where malice is imputed based solely on the defendant's participation in a crime. But for *attempted murder*, section 1172.6 applies only to defendants convicted under the natural and probable consequences doctrine. Because the language of section 1172.6 is plain and unambiguous, we need not consider the legislative history to determine the statute's meaning. (See *People v. Blackburn* (2015) 61 Cal.4th 1113, 1123 ["'If no ambiguity appears in the statutory language, we presume that the Legislature meant what it said, and the plain meaning of the statute controls.'"]; *People v. Johnson* (2002) 28 Cal.4th 240, 244 ["If the plain language of the statute is clear and unambiguous, our inquiry ends, and we need not embark on judicial construction."]; *People v. Burke* (2023) 89 Cal.App.5th 237, 243 [where "the statutory language is clear and unambiguous, we follow its plain meaning and do not consider the legislative history"].)[3]

---

[3] Wallace also argues section 1172.6 "applies whenever the prosecution *could have* proceeded on a natural and probable consequences theory," even if that theory was not "the basis of the defendant's conviction." That argument is directly contradicted by the first sentence of section 1172.6, which states a "person *convicted of* . . . attempted murder under the natural and probable consequences doctrine . . . may file a petition with the court . . . to have the petitioner's murder, attempted murder,

9

Wallace's argument fails for a second reason: The kill zone theory is not a "theory under which malice is imputed to a person based solely on that person's participation in a crime." Instead, the kill zone theory is a "theory for establishing the specific intent to kill required for conviction of attempted murder." (*People v. Canizales*, *supra*, 7 Cal.5th at p. 607; see *People v. Hin* (2025) 17 Cal.5th 401, 457 [kill zone theory may "establish the specific intent to kill"].) Under the kill zone theory, "'the nature and scope of the attack directed at a primary victim may raise an inference that the defendant "'intended to ensure harm to the primary victim by harming everyone in that victim's vicinity.'"'" (*Hin*, at p. 457; see *Canizales*, at p. 602.) The theory does not impute malice. To convict a defendant under the kill zone theory, the jury must find the "defendant intended to kill everyone in the kill zone as a means of killing the primary target." (*Canizales*, at p. 607, fn. 5.)

For the attempted murders of Strattion, Eddings, and Cantlope (counts 8, 9, and 10), the trial court instructed the jury on attempted murder and the kill zone theory with CALCRIM No. 600: "The defendant is charged . . . with attempted murder. To prove that the defendant is guilty of attempted murder, the People must prove that: [¶] 1. The defendant took at least one direct but ineffective step toward killing another person; [¶] AND [¶] 2. The defendant intended to kill that person." The court further instructed the jury: "A person may intend to kill a specific victim or victims and at the same time intend to kill anyone in a particular zone of harm or 'kill zone.' In order to convict the defendant of the attempted murder of La Tonya

<hr>

or manslaughter conviction vacated and to be resentenced . . . ." (§ 1172.6, subd. (a), italics added.)

10

Strattion, James Eddings, Marion Cantlope in counts 8, 9, and 10, the People must prove that the defendant not only intended to kill Llewelyn Miller [the primary target] but also *intended to kill anyone within the kill zone or intended to kill Llewelyn Miller by harming everyone in the kill zone*, then you must find the defendant not guilty of the attempted murder of the victims in counts 8, 9, and 10." (Italics added.)[4]

Wallace argues the kill zone instruction "permitted the jury to find him guilty of attempted murder even if his intent was only to harm, and not to kill, thereby imputing malice to him." Wallace made the same argument in his direct appeal, and we rejected it, concluding "no reasonable juror 'could have failed to understand from the instructions as a whole' that 'harm' meant 'harm of death' and that an attempted murder conviction requires a defendant's intent to kill his victims." (*Wallace I*, *supra*.) Wallace argues that, at the time of his trial in 2008, CALCRIM No. 600 referred to "'harm,'" but "the legal landscape has changed" since then. He cites *People v. Stone* (2009) 46 Cal.4th 131, where the Supreme Court stated "it would be better for [CALCRIM No. 600] to use the word 'kill' consistently rather than the word 'harm'" (*id.* at p. 138, fn. 3) and points out CALCRIM No. 600 "has since been amended" to replace "harm" with "kill." Wallace argues he "could not currently be convicted of attempted murder under the instructions given here."

To be eligible for relief under section 1172.6, however, Wallace must show he can no longer be convicted of attempted

---

[4] In his direct appeal Wallace argued the trial court erred in omitting the phrase "if you have a reasonable doubt" from the kill zone instruction. We concluded any error was harmless. (*Wallace I*, *supra*, B216931.)

murder "*because of* changes to Section 188 or 189 made effective January 1, 2019" (§ 1172.6, subd. (a)(3), italics added), not because of changes to the law governing, or the pattern jury instructions describing, the kill zone theory. Wallace cannot make that showing because the 2019 legislative changes did not make any changes to the kill zone theory or the intent requirement for attempted murder. (See *People v. Berry-Vierwinden* (2023) 97 Cal.App.5th 921, 935 ["the instructional errors [the defendant] asserts have nothing to do with these 2019 legislative changes"]; *People v. Burns* (2023) 95 Cal.App.5th 862, 867 [rejecting argument that the "misleading former version of CALCRIM No. 400 created, in effect, an 'other theory' of imputed malice within the meaning of section 1172.6"]; *People v. DeHuff* (2021) 63 Cal.App.5th 428, 438 [section 1172.6 "does not permit a petitioner to establish eligibility on the basis of alleged trial error"].)

Finally, Wallace argues section 1172.6 violates his right to equal protection by providing relief to "people convicted of attempted murder under a natural and probable consequences theory," but not to people convicted of "other forms of imputed malice attempted murder . . . such as the 'kill zone' theory." Wallace's equal protection argument fails because, as discussed, the kill zone theory is not a form of "imputed malice attempted murder."

## DISPOSITION

The order is affirmed.

SEGAL, J.

We concur:

MARTINEZ, P. J.

STONE, J.