Filed 5/23/24  P. v. Pugh CA2/1
Opinion following order vacating prior opinion

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>WILBERT PUGH,<br><br>    Defendant and Appellant. | B329084<br><br>(Los Angeles County<br>Super. Ct. No. TA037534) |

APPEAL from an order of the Superior Court of Los Angeles County, John J. Lonergan, Jr., Judge.  Affirmed.

Richard D. Miggins, under appointment by the Court of Appeal, for Defendant and Appellant.

Ron Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and David A. Wildman, Deputy Attorneys General, for Plaintiff and Respondent.

_____

In 1998, a jury convicted defendant and appellant Wilbert Pugh of the murder of Corie Williams and the attempted murder of Tyrone Lewis. "Effective January 1, 2019, the Legislature passed Senate Bill [No.] 1437 'to amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life.' [Citation.]" (*People v. Lewis* (2021) 11 Cal.5th 952, 959.) Senate Bill No. 1437 also added former Penal Code[1] section 1170.95, now section 1172.6, providing the procedure for a defendant convicted of felony murder or murder based on the natural and probable consequences doctrine to request resentencing relief. (*People v. Gentile* (2020) 10 Cal.5th 830, 843.) The Legislature subsequently amended section 1170.95 to include attempted murder. (*People v. Whitson* (2022) 79 Cal.App.5th 22, 30.)

This is an appeal from the resentencing court's denial of Pugh's resentencing petition after an order to show cause hearing (§ 1172.6, subd. (d)(3)). In a prior appeal, we reversed the resentencing court's conclusion that Pugh was ineligible as a matter of law for resentencing on his murder conviction. (*People v. Pugh* (Mar. 23, 2021, B301904) [nonpub. opn.].) In that appeal, we did not consider Pugh's attempted murder conviction because the prior appeal predated inclusion of attempted murder in former section 1170.95.

---

[1] Undesignated statutory citations are to the Penal Code.

Following remand, the resentencing court held a section 1172.6, subdivision (d)(3) hearing and found beyond a reasonable doubt that Pugh was guilty of murder and attempted murder under current law.  Pugh appeals from the resentencing court's denial of that petition.  Pugh challenges the sufficiency of the evidence supporting intent to kill.  We conclude substantial evidence supported the resentencing court's finding of intent to kill and thus affirm.

## FACTUAL BACKGROUND

Our standard of review for sufficiency of the evidence requires us to interpret the facts in the light most favorable to the resentencing court's order.  (*People v. Reyes* (2023) 14 Cal.5th 981, 988.)  No witnesses testified at the order to show cause hearing.  Thus, the only testimony before the resentencing court was from the trial.  We summarize that evidence in accordance with our standard of review.

Pugh was a member of a Crips gang and felt disrespected when members of a rival Bloods gang displayed gang signs while riding on a public bus through Pugh's neighborhood.  Beginning at least in 1996, Pugh and his fellow Crips were upset by the Bloods's "disrespect."  Bloods members often wore red to symbolize their gang membership.

On January 15, 1997, Pugh and codefendant Robert Johnson discussed a plan to counter the Bloods's "disrespect."  They discussed "getting the guys [members of the Bloods gang] on the bus."  At the time of the discussion, Johnson was armed with a gun.

On January 16, 1997, Pugh and his confederates, including Johnson and Randall Amado, waited at a bus stop at the corner of Imperial and Avalon.  Witnesses observed between six and

3

20 people with Pugh.  Pugh was the leader of the younger gang members, including Johnson.  Pugh organized the group, asked, "Y'all ready?" and led them to the bus stop.  Pugh was armed with a weapon.  Johnson and Amado also were armed.

When the public bus stopped, Amado and Pugh boarded the bus.  There were members of a Bloods gang on the bus.  Amado or Pugh shouted "BK for life" meaning "Blood Killers" for life.  One of them pointed to Lewis.  Lewis was wearing a red shirt even though he was not a member of a gang.  Pugh or Amado, or both shouted, "Shoot this mother fucking bus up."  Johnson then fired approximately five shots into the bus.

Along with Lewis, Corie Williams and Tammy Freeman were passengers on the bus.  Corie Williams died from a gunshot wound to her neck.  Freeman was injured by a bullet.

After the shooting, Johnson ran away from the scene and his confederates followed in the same direction.  Pugh said, "[We] got this girl.  We got somebody."  Pugh and Johnson laughed about the shooting.

## PROCEDURAL BACKGROUND

Pugh, Amado, and Johnson were tried together before two juries, one for Johnson and the other for Pugh and Amado.[2]  The jury convicted Pugh of the first degree murder of Corie Williams.  The jury found Pugh guilty of the attempted murder of Tyrone Lewis and found it was committed willfully, deliberately, and with premeditation.  The jury found Pugh guilty of assault with a firearm upon Tammy Freeman.  With respect to each crime, the jury found a principal was armed with a firearm.

---

[2]  In an interview, Johnson admitted being the killer.  The Pugh/Amado jury did not hear that evidence.

4

The court sentenced Pugh to 26 years to life for murder, a concurrent life sentence with the possibility of parole for the attempted murder, and a three-year concurrent determinate term for the assault with a firearm. We affirmed Pugh's convictions on direct appeal. (*People v. Johnson et al.* (June 14, 2001, B129670) [nonpub. opn.].)

Pugh filed a petition for resentencing pursuant to former section 1170.95, now section 1172.6. We previously reversed the summary denial of that petition. (*People v. Pugh*, *supra*, B301904).)

Upon remand, the resentencing court held an order to show cause hearing. The court indicated it had reviewed the trial transcript and cited to specific pages in the transcript. Among other things, the court found that Pugh had intent to kill, the sole finding being challenged on this appeal.[3]

## DISCUSSION

On appeal, Pugh argues: "While there may have existed a plan to fight those members of the Bloods gang sitting on the bus, there was no evidence of a plan or an intent to shoot, or shoot at, the Bloods. Each of the counts arose as a result of the unanticipated and unintended use of a gun by co-defendant Johnson."

---

[3] Respondent asserts that to be guilty of murder, express intent to kill is not required; implied malice may suffice. (*People v. Reyes*, *supra*, 14 Cal.5th at pp. 988–989.) We need not consider implied malice because we conclude substantial evidence supports the resentencing court's finding that Pugh acted with express malice, i.e., intent to kill.

5

As just noted, on appeal from the denial of a resentencing petition after a hearing, we review for substantial evidence. (*People v. Reyes*, *supra*, 14 Cal.5th at p. 988.)  We thus view the evidence in the light most favorable to the court's order to determine whether any reasonable trier of fact could have made the same determination beyond a reasonable doubt.  (*Ibid*.)  Reversal on a substantial evidence ground "is unwarranted unless it appears 'that upon no hypothesis whatever is there sufficient substantial evidence to support [the conclusion of the trier of fact].'  [Citation.]"  (*People v. Bolin* (1998) 18 Cal.4th 297, 331.)  " 'There is rarely direct evidence of a defendant's intent.  Such intent must usually be derived from all the circumstances of the attempt, including the defendant's actions.'  [Citation.]"  (*People v. Smith* (2005) 37 Cal.4th 733, 741.)

The following evidence supported the resentencing court's finding that Pugh intended to kill Bloods gang members on the bus.  The day before the shooting, Pugh and Johnson planned to "get" the Bloods gang members who had been "disrespecting" the Crips for a long period of time.  The day of the shooting, and armed with a firearm, Pugh led a group to the bus stop at Imperial and Avalon.  Pugh and Amado boarded the bus and one of them said, "[S]hoot this mother fucking bus up."  After receiving this instruction, Johnson then tried to kill Lewis and killed Williams.  Throughout these events, Johnson and Pugh were armed.  After the murder, Pugh and Johnson laughed about it.  Taken together, Pugh's arming himself, leading a group to the bus stop, boarding the bus, either calling for "shooting the bus up" or supporting Amado in that quest, and boasting about the killing afterwards supports the inference that Pugh intended to kill rival gang members on the bus.

6

The fact that neither Lewis nor Williams was a gang member does not undermine the conclusion that substantial evidence supported the resentencing court's finding of intent to kill. With respect to Lewis, the mental state required for attempted murder is the intent to kill a human being, not a particular human being.[4] (*People v. Stone* (2009) 46 Cal.4th 131, 141.) Even though Lewis was not a gang member, Pugh perceived him as a rival gang member because Lewis was wearing red. Either Pugh or Amado also specifically pointed to Lewis as a target when they boarded the bus to search for rival gang members. With respect to Williams, "the doctrine of transferred intent applies when the defendant intends to kill one person but mistakenly kills another.[5] The intent to kill the intended target is deemed to transfer to the unintended victim so that the defendant is guilty of murder." (*People v. Bland* (2002) 28 Cal.4th 313, 317.) An aider and abettor can be convicted based on the transferred intent doctrine. (*People v. Vasquez* (2016) 246 Cal.App.4th 1019, 1026; see also *People v. Venegas* (2020) 44 Cal.App.5th 32, 38–39.)

Pugh's contrary argument does not view the evidence in the light most favorable to the resentencing court's finding.[6] Pugh contends that he intended only to beat up the members of the Bloods gang on the bus, not to kill them, and emphasizes he was

---

[4] During closing argument, the People acknowledged that Lewis was not a member of the Bounty Hunter Bloods gang.

[5] The trial court instructed the jury on transferred intent with respect to the murder.

[6] In making this argument, Pugh adopts the statement of facts from his opening brief on his direct appeal.

7

only 20 years old at the time of the shooting.  Even if the evidence could support Pugh's argument that he intended to beat up the rival gang members, it also supports the resentencing court's conclusion that Pugh intended to kill rival gang members. Additionally, as respondent argues, "There was no unarmed non-lethal attack launched against the Blood gang members," thus undermining an inference that Pugh and his confederates intended only to beat up the rival gang members.  Although on appeal Pugh references his age, he offers no legal argument explaining how his age is relevant to assessing his intent to kill and thus we do not address it further.[7]  (*People v. Hovarter* (2008) 44 Cal.4th 983, 1029.)  By failing to consider the evidence in accordance with our standard of review, he has failed to show the resentencing court erred in finding Pugh intended to kill.[8] (*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573.)

---

[7] Pugh cites authority for the proposition that mandatory life without parole for juvenile defendants under the age of 18 violates the Eighth Amendment's prohibition on cruel and unusual punishment and that a trial court has discretion under California law to sentence a minor defendant to 25 years to life. (See, e.g., *People v. Gutierrez* (2014) 58 Cal.4th 1354, 1360–1361; *Miller v. Alabama* (2012) 567 U.S. 460, 465.)  These cases do not apply to Pugh, who was not under 18 at the time he committed the crimes and not sentenced to life without the possibility of parole.  We recognize that a defendant's age might be relevant to assessing whether the defendant acted with reckless indifference to human life.  (*In re Harper* (2022) 76 Cal.App.5th 450, 469.)  In this appeal, Pugh challenges the resentencing court's finding as to his mental state of intent to kill, not any mental state of reckless indifference to human life.

[8] Because we conclude substantial evidence supported the resentencing court's order, we need not consider respondent's

8

## DISPOSITION

The order denying Wilbert Pugh's petition for resentencing is affirmed.

NOT TO BE PUBLISHED.

BENDIX, J.

We concur:

ROTHSCHILD, P. J.

CHANEY, J.

---

argument that Pugh was ineligible for resentencing as a matter of law.