Filed 4/30/25  P. v. Sanders CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE, | B337440 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA224512) |
| v. | |
| GENE SANDERS, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Renee Korn, Judge.  Affirmed.

Vanessa Place, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Idan Ivri and Melanie Dorian, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Defendant and appellant Gene Sanders challenges the trial court's denial of his petition for resentencing under Penal Code section 1172.6.[1]  A jury convicted Sanders of two counts of murder (§ 187, subd. (a)), six counts of attempted murder (§§ 187, subd. (a), 664), and two counts of robbery (§ 211) for three separate incidents that occurred in an 11-month span in 2000 and 2001.  Sanders's petition and this appeal concern only one of those incidents, a 2001 shootout with a rival gang in which an innocent bystander was killed, for which Sanders was convicted of one count of murder and six counts of attempted murder.

The trial court found that Sanders had failed to make a prima facie case for resentencing and denied his petition because "the jury was not instructed on felony-murder, [the] natural [and] probable consequences [doctrine], or any other theory under which malice is imputed to a person based solely on that person's participation in a crime" (fn. omitted).  Thus, Sanders remained guilty despite amendments to the law that eliminated murder liability on the basis of imputed malice.  (See Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Senate Bill 1437).)

Sanders contends this was error, and that the instruction on the "kill zone" theory of attempted murder, together with instructions on transferred intent and proximate causation,

_____

[1] At the time Sanders filed his petition, the applicable statute was found at Penal Code section 1170.95.  Assembly Bill No. 200 (2021-2022 Reg. Sess.) has since renumbered section 1170.95 as section 1172.6.  (See Stats. 2022, ch. 58, § 10.)  For clarity, we refer to the current citation at section 1172.6 throughout.  Unless otherwise specified, subsequent statutory references are to the Penal Code.

allowed the jury to convict him on the basis of imputed malice. We disagree and affirm, as we explain below.

## BACKGROUND

### A.     The Alleged Offense Conduct

Because courts may not engage in factfinding at the prima facie stage (*People v. Lewis* (2021) 11 Cal.5th 952, 972), we summarize the underlying facts briefly and only as background for understanding the issues.  We draw this procedural history from our prior opinion in Sanders's direct appeal of his convictions (*People v. Sanders* (Mar. 3, 2005, B171765) [nonpub. opn.]).

The prosecution alleged that two men approached an abandoned building in South Los Angeles where 15 to 20 members of the 38th Street gang were gathered.  The two men moved to opposite sides of the street and opened fire on the 38th Street members, who fired back.  Maria Villalvazo, who lived in a home nearby, was struck and killed by a stray bullet when she went to a window to see what was happening.  None of the 38th Street members was hit, but one of the two men who initiated the shooting collapsed, and he and his companion fled.  Police found a trail of blood leading away from the area where the man collapsed, and DNA testing disclosed that the blood was Sanders's.  Sanders went to a hospital for treatment for a gunshot wound in his ankle less than an hour after the shooting took place.  A fellow member of Sanders's Pueblo Bishop gang told police he heard Sanders say that Sanders and another Pueblo Bishop member planned and executed the shooting as retaliation for an attack by 38th Street a few days earlier.

3

**B.     The Prior Section 1172.6 Petition**

Sanders previously petitioned for relief under section 1172.6 on January 14, 2019.  In that petition, Sanders sought resentencing on one murder conviction that was based on a theory of felony murder.  That murder occurred on a different date than the offenses at issue now.  The trial court denied the petition, and we affirmed.  (*People v. Sanders* (Jul. 1, 2020, B302630) [nonpub. opn.].)  The issues surrounding that petition and the underlying murder conviction are not relevant to this appeal.

**C.     The Current Section 1172.6 Petition**

On March 14, 2023, following the enactment of a new law expanding section 1172.6 to allow for resentencing of defendants convicted of attempted murder (Senate Bill No. 775 (2021-2022 Reg. Sess.) (Senate Bill 775)), Sanders filed a second petition for resentencing.  This is the petition at issue in this appeal, and it concerned Sanders's remaining murder conviction as well as the six attempted murder convictions.

The trial court appointed counsel to represent Sanders, and obtained briefing from both sides.  Sanders's attorney argued that Sanders was eligible for resentencing on the murder conviction alone, and conceded at a hearing that he was ineligible for resentencing on the attempted murder convictions because the instructions required the jury to find that Sanders acted with the intent to kill.  Based on the instructions given to the jury, the trial court found that Sanders had failed to make a prima facie case for resentencing as to the murder conviction or the attempted murder convictions and denied the petition.  Sanders timely appealed.

4

## DISCUSSION

Sanders's appellate arguments bear no relationship to those he made below. Before the trial court, he conceded he was ineligible for relief on his attempted murder convictions. On appeal, he has reversed course and now claims he made a prima facie showing of eligibility for relief on those convictions. With regard to the murder conviction, Sanders made no argument before the trial court that a kill zone jury instruction showed he was potentially convicted on an imputed malice theory. His appeal, on the other hand, is based almost entirely on the kill zone instruction.

Although we do not condone this litigation behavior, we need not decide whether to apply principles of estoppel and forfeiture to it. Our review is de novo (*People v. Beaudreaux* (2024) 100 Cal.App.5th 1227, 1238), the issues presented are legal and not factual (*People v. Superior Court (Zamudio)* (2000) 23 Cal.4th 183, 195), and Sanders's arguments fail even if he is not barred from asserting them.

### A.    Background on Resentencing under Section 1172.6

Section 1172.6 allows certain defendants convicted of murder, attempted murder, or voluntary manslaughter to petition the trial court for their convictions to be vacated and to be resentenced. To be eligible for relief under the statute, it must be the case that "[t]he petitioner could not presently be convicted of murder or attempted murder because of changes to [s]ection 188 or 189 made effective January 1, 2019." (§ 1172.6, subd. (a)(3).) These changes to the law, enacted as part of Senate Bill 1437, amended section 188 to provide that, "Except as stated in subdivision (e) of [s]ection 189, in order to be convicted of murder, a principal in a crime shall act with malice aforethought. Malice

5

shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) The effect of this amendment was to abolish the natural and probable consequences doctrine as a basis of liability for murder. (*People v. Gentile* (2020) 10 Cal.5th 830, 847-848.) Prior to the enactment of Senate Bill 1437, a defendant could be convicted of murder under this doctrine simply by acting as an accomplice in an offense that foreseeably resulted in the commission of a murder, even if the defendant did not share the mens rea of the killer. (*People v. Curiel* (2023) 15 Cal.5th 433, 449; *People v. Chiu* (2014) 59 Cal.4th 155, 164-165.)

In addition to abolishing the natural and probable consequences doctrine, Senate Bill 1437 also amended section 189 to restrict the application of the felony-murder doctrine, requiring greater personal culpability for a defendant to be liable under that doctrine. (See *People v. Strong* (2022) 13 Cal.5th 698, 707-708.) To convict a defendant of felony murder under the new law, the prosecution must prove that the defendant either was the actual killer (§ 189, subd. (e)(1)); acted with the intent to kill in aiding, abetting, commanding, encouraging, or soliciting the actual killer (*id.*, subd. (e)(2)); or "was a major participant in the underlying felony and acted with reckless indifference to human life" (*id.*, subd. (e)(3)).

To obtain relief under section 1172.6, a petitioner must first make a prima facie case for eligibility. (See *id.*, subd. (c).) "[T]he prima facie inquiry under [section 1172.6,] subdivision (c) is limited," and the trial court must " ' "take[ ] [the] petitioner's factual allegations as true" ' " and "should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' [Citation.]" (*People v. Lewis*, *supra*, 11 Cal.5th at

pp. 971, 972.)  The court may deny a defendant's petition if the record refutes the defendant's allegation that he is eligible for resentencing (*id.* at p. 971), but this does not occur "unless the record conclusively establishes every element of the offense." (*People v. Curiel*, *supra*, 15 Cal.5th at p. 463.)

## B.     The Trial Court Did Not Err in Finding Sanders Failed to Establish a Prima Facie Case as to the Attempted Murder Convictions

It is undisputed that no natural and probable consequences instruction was given to Sanders's jury.  Subdivision (a) of section 1172.6 sets out the categories of defendants who "may file a petition with the court" seeking "to be resentenced."  These categories are as follows:  "A person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, *attempted murder under the natural and probable consequences doctrine*, or manslaughter . . . ."  (*Ibid.*, italics added.)  Section 1172.6 thus "applies by its terms only to attempted murders based on the natural and probable consequences doctrine."  (*People v. Coley* (2022) 77 Cal.App.5th 539, 548; accord, *People v. Lovejoy* (2024) 101 Cal.App.5th 860, 865.)

Sanders argues we should not follow *Coley*, *Lovejoy*, or the language of the statute because the legislative history of Senate Bill 775 shows that the Legislature, in enacting that law, intended to extend to those convicted of attempted murder "the same relief as those persons convicted of murder under the same theories."  (Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Sen. Bill 775 (2021-2022 Reg. Sess.) May 25, 2021, p. 1.)  But "[i]f there is no ambiguity in the [statutory]

7

language, we presume the Legislature meant what it said and the plain meaning of the statute governs." (*People v. Snook* (1997) 16 Cal.4th 1210, 1215.) "Thus, legislative history . . . is *irrelevant* unless it aids in resolving an ambiguity in the statutory language." (*Siskiyou County Farm Bureau v. Department of Fish & Wildlife* (2015) 237 Cal.App.4th 411, 432.)

Senate Bill 775 amended section 1172.6, subdivision (a) to allow relief to those convicted of murder under any "other theory under which malice is imputed to a person based solely on that person's participation in a crime." (Senate Bill 775, § 2, amending former § 1170.95, subd. (a).) The provision in Senate Bill 775 regarding attempted murder unambiguously omitted this catch-all provision, and limited relief to such convictions "under the natural and probable consequences doctrine" only. (§ 1172.6, subd. (a)(2).) Sanders was therefore ineligible for relief as a matter of law on the attempted murder convictions.[2]

## C. The Trial Court Did Not Err in Denying the Petition as to the Murder Conviction

As to the charge of murdering Villalvazo, the jury received no instruction on either felony murder or the natural and probable consequences doctrine. Sanders argues he nevertheless established a prima facie case for resentencing because the instructions allowed him to be convicted on the basis of "[an]other theory under which malice is imputed to a person based solely on

---

[2] Even if one posits that section 1172.6, subdivision (a)(2) permits relief for attempted murder convictions in any case of potential imputed malice, Sanders would still be ineligible for relief as the kill zone instruction did not permit imputing another's malice to him. (See Discussion, Part C, *post*.)

8

that person's participation in a crime." (§ 1172.6, subd. (a).) More specifically, Sanders contends the kill zone instruction given to the jury (in conjunction with other instructions on transferred intent and proximate causation) allowed for a conviction based on imputed malice. This argument fails because the instructions as given required Sanders to be convicted based on his own malice, not malice imputed to him from an accomplice based on Sanders's participation in a crime.

The Legislature's stated purpose in enacting Senate Bill 1437 was to reaffirm the "bedrock principle of the law and of equity that a person should be punished for his or her actions according to his or her own level of individual culpability." (*Id.*, § 1, subd. (d).) Or, in other words, "[a] person's culpability for murder must be premised upon that person's own actions and subjective mens rea." (*Id.*, § 1, subd. (g).) The natural and probable consequences doctrine ran afoul of these principles because it " 'result[ed] in individuals lacking the mens rea and culpability for murder being punished as if they were the ones who committed the fatal act.' " (*People v. Gentile*, *supra*, 10 Cal.5th at p. 846, quoting Sen. Conc. Res. No. 48, Stats. 2017 (2017-2018 Reg. Sess.) res. ch. 175.)

The felony-murder rule, the other doctrine that the Legislature specifically targeted in Senate Bill 1437, worked the same way. Under the former version of the rule, " 'when the defendant or an accomplice kill[ed] someone during the commission, or attempted commission, of an inherently dangerous felony,' the defendant could be found guilty of the crime of murder, without any showing of 'an intent to kill, or even implied malice, but merely an intent to commit the underlying felony.' [Citation.]" (*People v. Strong*, *supra*, 13 Cal.5th at

9

p. 704.) Although neither Senate Bill 1437 nor Senate Bill 775 mentioned the doctrine of provocative act murder, our Supreme Court has held that a defendant convicted under that doctrine might be eligible for resentencing under section 1172.6's catch-all provision when at the time of the defendant's trial malice was not necessarily required on the part of a non-provocateur accomplice. (*People v. Antonelli* (Apr. 24, 2025, S281599) ___ Cal.5th ___ [2025 Cal. LEXIS 2303].)

All the doctrines described above were affected by section 1172.6 because they allowed a defendant to be convicted of a murder for which an accomplice was primarily responsible, even if the sole basis for the defendant's guilt was participating in some other crime with an accomplice who possessed the mens rea for murder (§ 1172.6, subd. (a)(1)). In cases where the defendant was the "sole and direct perpetrator of the shooting" (*People v. Patton* (2025) 17 Cal.5th 549, 563) or "the only participant in the killing" (*People v. Delgadillo* (2022) 14 Cal.5th 216, 233), it is impossible for a defendant to have been convicted on an invalid theory, and the petition may be denied at the prima facie stage.

Nothing in the jury instructions allowed Sanders to be convicted on the basis of an accomplice's mens rea. The kill zone instruction, which was based on the then-current version of CALJIC No. 8.66.1, read as follows: "A person who primarily intends to kill one person, may also concurrently intend to kill other persons within a particular zone of risk. This zone of risk is termed the 'kill zone.' The intent is concurrent when the nature and scope of the attack, while directed at a primary victim, are such that it is reasonable to infer the perpetrator intended to ensure harm to the primary victim by harming everyone in that victim's vicinity. [¶] Whether a perpetrator actually intended to

10

kill the victim, either as a primary target or as someone within a 'kill zone' is an issue to be decided by you." (*Ibid.*)

Sanders takes issue with certain aspects of this instruction, such as the references to the kill zone as a "zone of risk" and the focus on whether the perpetrator intended to "harm" rather than kill the victims. Indeed, in the years after Sanders's trial, the Supreme Court expressed concern regarding the overapplication of the kill zone theory in cases where it did not apply (see, e.g., *People v. Perez* (2010) 50 Cal.4th 222, 232; *People v. Stone* (2009) 46 Cal.4th 131, 138), cautioned that "there is a substantial potential that the kill zone theory may be improperly applied" (*People v. Canizales* (2019) 7 Cal.5th 591, 597), and disapproved the then-standard CALCRIM kill zone instruction (*Canizales, supra*, at pp. 609, 613-614).

But instructional error in itself is not a basis for relief under section 1172.6. (*People v. Flores* (2023) 96 Cal.App.5th 1164, 1173.) To make a prima facie case, a defendant must show that the jury instructions, whether erroneous or not,[3] allowed him to be convicted on a "theory under which malice is imputed to a person based solely on that person's participation in a crime." (§ 1172.6, subd. (a).) In this case, they did not. The kill zone instruction stated unequivocally that the jury must decide whether Sanders "*actually intended to kill* the victim, either as a primary target or as someone within a 'kill zone.' " (Italics added.)

---

[3] Because we may not "engage in 'factfinding involving the weighing of evidence or the exercise of discretion' " at the prima facie stage (*People v. Lewis*, *supra*, 11 Cal.5th at p. 972), we express no view as to whether the trial court erred in instructing the jury on the kill zone in this case.

Sanders objects that the kill zone instruction did not require an intent to kill any specific individual, but that is irrelevant here. The instruction still required the jury to find Sanders acted with the intent to kill; it did not permit the imputation of someone else's malice to him. The concerns our Supreme Court has expressed about the prior kill zone instruction had nothing to do with imputed malice. It was instead that the juries in attempted murder cases might find the defendant's intent to kill based on a legally inaccurate understanding of the defendant's own intent—not that of another individual. (E.g., *People v. Mumin* (2023) 15 Cal.5th 176, 209; *People v. Canizales*, *supra*, 7 Cal.5th at p. 614.)

In support of his claim that the kill zone instruction allowed for his murder conviction on the basis of imputed malice, Sanders cites *People v. Adams* (2008) 169 Cal.App.4th 1009, where the court held that a defendant could be convicted of attempted murder under a kill zone theory even if he did not know whether anyone was in the kill zone so long as he recognized or accepted "that a natural and probable consequence of that act would be that anyone within that zone could or would die." (*Id.* at p. 1023.) This conclusion is inconsistent with the Supreme Court's kill zone jurisprudence, in that "a defendant's awareness of the 'natural and probable consequences' of a dangerous act is not the equivalent of acting with intent to kill." (*People v. Ibarra* (2024) 106 Cal.App.5th 1070, 1080.) *Adams* concerned the sufficiency of the evidence supporting an attempted murder conviction, not the propriety of the jury instructions. Nothing in the instructions at issue here encouraged Sanders's jury to mistakenly impute another's malice to him; they instead directed the jury to evaluate Sanders's own

intent to kill. If Sanders had a concern with the sufficiency of the evidence regarding his intent to kill, he needed to raise it in his direct appeal. Section 1172.6 does not afford him a second opportunity to raise such sufficiency of the evidence questions when the instructions required a finding that he acted with the intent to kill.

We reach the same conclusion as to the doctrines of proximate cause and transferred intent. Neither of these doctrines nor the pertinent jury instructions allowed a conviction on the basis of imputed malice. The standard jury instruction on proximate cause contained in the second half of CALJIC No. 3.40 is substantively unchanged since the time of Sanders's trial. It states, "The criminal law has its own particular way of defining cause. A cause of murder is an act that sets in motion a chain of events that produces as a direct, natural and probable consequence of the act the death and without which the death would not occur." Although the instruction "refers to a death that is ' "a direct, natural and probable consequence of" ' the defendant's act, it does not concern the imputed malice theory of criminal liability that is part of the natural and probable consequences doctrine of accomplice liability affected by . . . Senate Bill . . . 1437." (*People v. Carney* (2023) 14 Cal.5th 1130, 1146.) This is because "the reference to 'direct, natural and probable consequence' in the proximate cause jury instruction[ ] . . . deals with the actus reus of murder[ and] does not implicate concerns regarding imputed mens rea and vicarious liability identified in . . . Senate Bill . . . 1437." (*Id.* at p. 1147.)

Transferred intent applies where " 'a defendant . . . shoots with the intent to kill a certain person and hits a bystander instead.' " (*People v. Bland* (2002) 28 Cal.4th 313, 321.) Even

13

though the defendant never meant to harm the bystander, he " 'is deemed as culpable as if he had accomplished what he set out to do.' [Citation.]" (*Ibid.*) Courts have "reject[ed] [the] suggestion that Senate Bill 1437 abrogated the doctrine of transferred intent"[4] because it assigns liability based on the defendant's own mens rea—it "requires an intent to kill." (*People v. Lopez* (2024) 99 Cal.App.5th 1242, 1250.) Although the defendant's malice is transferred from the intended victim to an unlucky bystander, this is not the same as imputing malice for purposes of section 1172.6 because it does not allow the jury to convict the defendant "without finding he personally harbored an intent to kill unlawfully." (*People v. Nguyen* (2024) 103 Cal.App.5th 668, 685; accord, *Lopez, supra*, at p. 1251.) This is consistent with the Legislature's goal, in enacting Senate Bill 1437, that " '[a] person's culpability for murder must be premised upon that person's own actions and subjective mens rea.' ([Senate Bill 1437], § 1, subd. (g).)" (*Nguyen, supra*, at p. 685.)

The jury instructions, whether considered in isolation or in conjunction with one another, did not allow Sanders to be convicted of murder "based solely on [his] participation in a crime" (§ 1172.6, subd. (a)) or by imputing to him someone else's mens rea. Accordingly, the trial court did not err by denying his petition at the prima facie stage. (See *People v. Harden* (2022) 81

---

**4** The jury instruction on transferred intent was based on CALJIC No. 8.65, which has not been changed since Sanders's trial. It states, "When one attempts to kill a certain person, but by mistake or inadvertence kills a different person, the crime, if any, so committed is the same as though the person originally intended to be killed, had been killed."

Cal.App.5th 45, 52; *People v. Estrada* (2022) 77 Cal.App.5th 941, 946.)

## DISPOSITION

The trial court's order is affirmed.

NOT TO BE PUBLISHED

WEINGART, J.

We concur:

ROTHSCHILD, P. J.

BENDIX, J.